[This opinion has been published in *Ohio Official Reports* at 70 Ohio St.3d 527.]

THE STATE OF OHIO, APPELLANT, *v.* LENTZ, APPELLEE.

[Cite as *State v. Lentz*, 1994-Ohio-532.]

*Criminal law—Defendant represented by two different attorneys from the same public defender's office at trial and on direct appeal—Res judicata applicable to petition for postconviction relief claiming ineffective assistance of counsel, when.*

When a criminal defendant is represented by two different attorneys from the same public defender's office at trial and on direct appeal, *res judicata* bars a claim of ineffective assistance of trial counsel raised for the first time in a petition for postconviction relief when such claim could have been made on direct appeal without resort to evidence beyond the record, unless the defendant proves that an actual conflict of interest enjoined appellate counsel from raising ineffective assistance of trial counsel on direct appeal.

(No. 92-2400—Submitted January 5, 1994—Decided October 12, 1994.)

CERTIFIED by the Court of Appeals for Trumbull County, No. 91-T-4622.

———————————

{¶ 1} Defendant-appellee, George Lentz, was tried before a jury on two counts of rape. Prior to trial, appellee's counsel, an attorney from the Trumbull County Public Defender's Office, filed a motion *in limine* to exclude evidence of Lentz's sexual conduct subsequent to the alleged rapes. The trial court overruled the motion and the state introduced the evidence at trial. The evidence consisted of the testimony of three witnesses, and trial counsel failed to properly object to their testimony at trial. Subsequently, Lentz was convicted of both counts of rape.

{¶ 2} On appeal, another attorney from the Trumbull County Public Defender's Office represented Lentz. Appellate counsel's sole assignment of error was that the trial court improperly admitted the other-acts evidence. The appellate

court found that while the evidence of Lentz's other sex acts was not admissible under Evid. R. 404(B), the fact that Lentz failed to object at trial resulted in a waiver of his right to assign as error the admission of such evidence. Appellate counsel failed to raise a claim of ineffective assistance of trial counsel, and Lentz's conviction was thus affirmed.

{¶ 3} On May 23, 1991, Lentz filed a petition for postconviction relief in which he alleged that he was denied effective assistance of counsel at both the trial and appellate levels. Lentz argued that trial counsel was deficient in failing to properly object during the trial to the introduction of the other-acts evidence, and that appellate counsel was deficient for failing to raise trial counsel's ineffective assistance.

{¶ 4} The trial court dismissed Lentz's petition, finding that *res judicata* barred Lentz's claim of ineffectiveness of trial counsel, since appellate counsel failed to raise the issue on direct appeal. Also, the trial court decided that it lacked jurisdiction to consider the issue of ineffective assistance of appellate counsel, pursuant to *State v. Murnahan* (1992), 63 Ohio St. 3d 60, 584 N.E.2d 1204.

{¶ 5} The appellate court found that the trial court erred when it held that *res judicata* barred Lentz's petition for postconviction relief, and reversed the trial court on this issue. The appellate court reasoned that under *State v. Cole* (1982), 2 Ohio St.3d 112, 2 OBR 661, 443 N.E.2d 169, *res judicata* would apply only if Lentz was represented by new counsel on appeal. Since appellate counsel was from the same public defender's office as the trial counsel, the court concluded that such counsel was not new under *Cole*. The appellate court found that "[j]ust as there is a conflict of interest in an attorney arguing his own ineffectiveness on appeal, so there is a conflict in a public defender arguing the ineffectiveness of his fellow public defender."

{¶ 6} The court of appeals, finding its decision on this issue to be in conflict with the decisions of the Eighth Appellate District in *State v. Jenkins* (1987), 42

Ohio App.3d 97, 536 N.E.2d 667, and *State v. Washington* (Jan. 31, 1991), No. 57921, unreported, certified the record of the case to this court for review and final determination.

—————————

*Dennis Watkins*, Trumbull County Prosecuting Attorney, and *Patrick F. McCarthy*, Assistant Prosecuting Attorney, for appellant.

*J. Dean Carro* and *C. Michael Walsh*, for appellee.

*Beverly J. Pyle* and *Margaret O. Isquick*, urging affirmance for *amicus curiae*, Cuyahoga County Public Defender.

—————————

**PFEIFER, J.**

**{¶ 7}** We hold that when a criminal defendant is represented by two different attorneys from the same public defender's office at trial and on direct appeal, *res judicata* bars a claim of ineffective assistance of trial counsel raised for the first time in a petition for postconviction relief when such claim could have been made on direct appeal without resort to evidence beyond the record, unless the defendant proves that an actual conflict of interest enjoined appellate counsel from raising a claim of ineffective assistance of trial counsel on direct appeal.

**{¶ 8}** In *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, this court found *res judicata* to be a proper basis upon which to dismiss without hearing a petition for postconviction relief. This court held that *res judicata* bars a convicted defendant from raising in a postconviction relief petition any defense that was raised or could have been raised by the defendant at trial or on direct appeal. *Id.* at paragraph nine of the syllabus.

**{¶ 9}** After *Perry*, this court and lower courts recognized exceptions to the absolute application of *res judicata* in postconviction relief proceedings where a claim of ineffective assistance of counsel is raised. This court's decision in *Cole*, *supra*, addressed and distilled those post-*Perry* decisions and forms the applicable

law in the area. *Cole* approvingly attributes to *State v. Carter* (1973), 36 Ohio Misc. 170, 65 O.O.2d 276, 304 N.E.2d 415, the notion that since "counsel cannot realistically be expected to argue his own incompetence, *res judicata* does not act to bar a defendant represented by the same counsel at trial and upon direct appeal from raising a claim of ineffective assistance of counsel in a petition for postconviction relief." *Cole* at 133, 2 OBR at 663, 443 N.E.2d at 171, fn. 1.

{¶ 10} That statement is implicitly included in the *Cole* syllabus, which states:

"Where defendant, represented by *new counsel* on direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence [beyond] the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief." (Emphasis added.) *Cole* at syllabus.

{¶ 11} *Cole* recognizes that *res judicata* does not apply when trial and appellate counsel are the same, due to the lawyer's inherent conflict of interest. The applicability of that conflict of interest to co-workers is questionable—*Cole* recognizes a conflict of interest that is highly personal, and thus it may be logically argued that the exception to *res judicata* applies only when trial and appellate counsel are the same person.

{¶ 12} However, Ohio's Code of Professional Responsibility states that a lawyer's conflict of interest is imputed to his law firm. DR 5-105(D). Therefore, an important question is whether a private law firm and a county public defender's office are analogous in regard to the question at hand.

{¶ 13} At the threshold level, the lack of a financial stake in the case's outcome sets the public defender apart from the private firm. A lawyer in private practice who is still being paid by a defendant would be less willing to admit that his firm's representation in an earlier stage of the proceedings was substandard. Also, unlike the public defender, the private attorney is in competition with other

law firms for clients' business, so diminished reputation more directly affects the finances of private sector attorneys.

**{¶ 14}** While a public defender's office may not have the financial conflicts of a private law firm, conflicts driven by loyalty, reputation and *esprit de corps* may be just as likely to arise in a public defender's office as in a private law firm.

**{¶ 15}** Still, the doubts or awkwardness such feelings engender does not give rise to the same level of conflict of interest that would occur were a lawyer representing competing parties or co-defendants with differing interests, and certainly does not create a level of *conflict* serious enough for this court to find a *per se* conflict of interest. A lawyer's supreme duty of loyalty is to his client(EC 5-1), and that is a duty that we should not assume will be ignored due to the possibility of embarrassing a co-worker.

**{¶ 16}** To find that counsel from the same public defender's office is *per se* not "new counsel" for purposes of asserting a claim of ineffective assistance of counsel at the postconviction stage would be to find that there is a *per se* conflict at the appellate level as well. We are not prepared to say, as *amicus* suggests, that in every case where ineffectiveness of trial counsel may be raised there is a conflict of interest disqualifying the public defender's office from representation, and necessitating the appointment of private counsel.

**{¶ 17}** Upon considerations of petitions for postconviction relief, the trial court should conduct a case-by-case analysis to determine whether an actual conflict of interest existed which kept appellate counsel from effectively arguing ineffectiveness of trial counsel. If circumstances peculiar to the case indicate the presence at the appellate level of an actual conflict of interest, then *res judicata* does not bar a claim for postconviction relief based upon ineffectiveness of trial counsel.

**{¶ 18}** Of course, it should not be necessary to instruct public defenders that if an actual conflict does exist at the appellate level that they should either procure

a waiver of the conflict from the defendant or cease representation in the case. Any lawyer who does not do so is violating his ethical obligation to avoid conflicting representation, and also creates a viable claim for ineffective assistance of appellate counsel. *Murnahan*, *supra*.

{¶ 19} We accordingly reverse the judgment of the court of appeals and remand the cause to the trial court to determine whether an actual conflict of interest enjoined appellate counsel from asserting the ineffectiveness of Lentz's trial counsel.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS and RESNICK, JJ., concur.

F.E. SWEENEY, J., concurs in the syllabus and judgment only.

A.W. SWEENEY and WRIGHT, JJ., dissent.

_____

**WRIGHT, J., dissenting.**

{¶ 20} For the reasons discussed below, I respectfully dissent from the majority's opinion.

{¶ 21} George Lentz is seeking the ability to raise a claim of ineffectiveness of his trial and appellate attorneys in a petition for post-conviction relief. This case is *not* concerned with the merits of his claim of ineffectiveness. The issue before the court is whether he even has the right to make the argument that his attorneys were constitutionally defective.

{¶ 22} The defendant argues that he should not be barred from raising the ineffectiveness argument even though it was not raised at trial or on appeal. He asserts that his appellate public defender had a conflict of interest which kept that counsel from arguing the ineffectiveness of his officemate. He argues that this situation comes under an exception to *res judicata* because the appellate counsel

had a conflict of interest that precluded him from raising the ineffectiveness claim. *State v. Cole* (1982), 2 Ohio St.3d 112, 2 OBR 661, 443 N.E.2d 169. I agree.

**{¶ 23}** I respectfully suggest that the majority fails to adequately consider how a conflict of interest may affect a public defender on appeal from arguing the ineffectiveness of a co-worker. Specifically, the majority does not fully consider the arguments for applying a *per se* rule of imputed conflict of interest similar to the one required for private law firms. In the place of a *per se* rule, the court establishes an "actual conflict" test. However, what is truly troubling is the majority's failure to provide appropriate guidance to lower courts on how to apply that test.

**{¶ 24}** Application of the standard announced by the court today will be extremely difficult for lower courts. The pressures which cause a conflict of interest are subtle and therefore difficult to detect. Those pressures are nonetheless detrimental to the active representation and advocacy upon which our system of justice depends.

**{¶ 25}** An appellate public defender arguing that a public defender from the same office was constitutionally ineffective at trial should be found to have an imputed conflict of interest. This court has established that only where a defendant was "represented by new counsel who was in no way enjoined from asserting the ineffectiveness of appellant's trial counsel" would that defendant not qualify for the *res judicata* exception. *Cole*, 2 Ohio St.3d at 114, 2 OBR at 663, 443 N.E.2d at 171. An appellate public defender faced with the prospect of arguing the ineffectiveness of a co-worker as trial counsel is enjoined from arguing that ineffectiveness by virtue of appellate counsel's position in the same office.

**{¶ 26}** The appellate attorney faced with arguing that his officemate was ineffective is affected by numerous and subtle interests that degrade his ability to act in his client's best interests. The Cuyahoga County Public Defender, as a certainly well-versed *amicus curiae*, can realistically see the problem at issue:

"Every appellate public defender in this situation feels torn between zealously representing his client as required under Canon 7, and defending himself (as he views himself as the same legal entity as trial counsel), from claims of ineffective assistance of counsel. The public defender appellate attorney's judgment *cannot help but be compromised* in this situation." (Emphasis added.)

**{¶ 27}** The effect of the interests which conflict with the attorney's duty to his client is difficult to detect. The appropriate means to deal with this type of conflict is through the use of a blanket rule defined by the circumstances which give rise to the conflict. Under the circumstances in this case, an appellate attorney faced with arguing the ineffectiveness of another attorney in the same office should be subject to a *per se* conflict-of-interest rule.

**{¶ 28}** The Code of Professional Responsibility provides that a *per se* conflict of interest applies in this situation. Specifically, DR 5-105(D) provides that where one lawyer in a firm has a conflict of interest the conflict is imputed to all other members of the firm. As the majority notes, *Cole* at least stands for the proposition that an attorney has a conflict of interest which precludes him from arguing his own ineffectiveness. Where that attorney is a member of a private law firm there is no question under the Code of Professional Responsibility that every member of his firm would have an imputed conflict of interest under DR 5-105(D). As a result, every member of the firm would qualify as having a conflict under *Cole*. The question becomes whether a public defender's office should be treated any different from a private law firm. The majority finds that they should be treated differently. Upon thoughtful review, I must disagree.

**{¶ 29}** Common experience provides that a public defender's office should be treated the same as any other private law firm for purposes of DR 5-105(D). The majority's conclusion to the contrary is based upon an overly narrow consideration of the salient characteristics of the two types of organizations.

{¶ 30} The characteristics of a law firm which provide the sound basis for an imputed conflict-of-interest rule in this context are also present in public defenders' offices. The majority finds that a public defender's office should be treated differently from a private law firm because the members of the private firm have an economic interest in not alleging ineffectiveness of co-workers, as such allegations would harm the reputation of the firm and its business-development potential. The majority's belief that protecting the reputation of the group is only a motivator to the extent that reputation may harm the group as a business is plainly wrong. Every attorney, like every worker in the marketplace, associates his or her sense of worth in his or her job with the reputation of his or her organization. The majority's argument belies a limited understanding of what motivates people and cannot serve as a proper distinction between public and private legal organizations.

{¶ 31} The majority's focus on economic interest alone ignores many of the more important interests involved where an attorney has to argue the incompetence of an officemate. DR 5-105(D) is properly concerned with all the potential influences on an attorney that may conflict with his duty to the client. David Webster, a noted trial attorney, exposes the narrowness of the majority's position: "It might be argued that there are no conflict of interest questions in the public defender context because of the absence of economic interest in challenging or refraining from challenging the conduct of trial counsel. *However, this view completely ignores the fact that the same subtle but real non-economic pressures present in private practice are equally operative in a public defender service*. After all, the rules concerning conflict of interest operate on and are enforced against lawyers and not against public or private law firms. By their nature, the non-economic conflicts—friendship, loyalty, pride, fear of ostracism or retaliation—operate with equal vigor on the individual lawyer in the public firm. It is he who feels the conflict, not the form of his law association, upon whom the ethical considerations must prevail." (Emphasis added.) The Public Defender, the Sixth

Amendment, and the Code of Professional Responsibility: the Resolution of a Conflict of Interest (1975), 12 Am.Crim.L.Rev. 739, 742. The majority fails to confront the factors discussed by Webster—friendship, loyalty, pride, fear of ostracism or retaliation—which are present in the public defender context and form the basis of DR 5-105(D). Instead, the court focuses on an irrelevant distinction of economic motive to justify treating public defenders differently from private firms.

{¶ 32} Legal authority in this area is to the effect that a public defender's office should be treated the same as a private law firm for imputed conflict-of-interest analysis. See *McCall v. District Court* (Colo. 1989), 783 P.2d 1223 (*en banc*); *Hill v. State* (Ark. 1978), 566 S.W.2d 127 (*en banc*); *Adams v. State* (Fla. 1980), 380 So.2d 421, 422; *Commonwealth v. Willis* (1981), 492 Pa. 310, 424 A.2d 876; *People v. Cano* (1991), 220 Ill. App.3d 725, 581 N.E.2d 236; *Commonwealth v. Green* (1988), 379 Pa. Super. 602, 550 A.2d 1011.

{¶ 33} The majority's decision that a conflict of interest does not exist *per se* here is also based on a misconception regarding the impact such a holding would have on the daily workings of the Ohio criminal justice system. The majority incorrectly states that a holding of *per se* conflict would require the appointment of private counsel on every appeal of ineffectiveness.

{¶ 34} Not all the Ohio counties have county public defender offices. In those counties without public defender offices, local attorneys are appointed by the trial court to represent indigent defendants. The concerns expressed in this case with respect to the pressures against arguing that a fellow officemate is ineffective would not be present where the attorneys are acting independently, with their own support staff, offices and business and professional interests.

{¶ 35} In those counties with public defenders, the trial court has the option of appointing not only private counsel but may also appoint an attorney from the State Public Defender's Office to represent the defendant on appeal. R.C. 120.17. Where the county public defender acted as the trial counsel, a conflict would not be

imputed to the State Public Defender who works out of another office. In that situation, as with private, appointed attorneys, many of the concerns of arguing the incompetence of an officemate do not apply.

**{¶ 36}** The majority has taken a dangerous path by instituting an actual-conflict standard. First, the majority fails to provide any guidance to lower courts on how to administer the standard. Second, there is an inherent difficulty in one's being able to determine that a subtle interest was at work undermining the quality of a defendant's appellate representation.

**{¶ 37}** Webster and *amicus* agree that the interests which cause a conflict of interest—friendship, loyalty, pride, fear of ostracism or retaliation—are present in *every* case where an attorney is faced with arguing the ineffectiveness of a co-worker. The presence of those interests in every case is what justifies a *per se* rule.

**{¶ 38}** Another reason for applying a *per se* rule instead of an actual-conflict rule is the difficulty in objectively determining the presence of the interests that degrade the quality of a defendant's appellate representation. The majority has provided no guidance to lower courts on how to determine what level of a conflicting interest or combination of interests will qualify as an actual conflict. Those courts will now be faced with difficult, subjective analysis, such as what level of loyalty a particular appellate public defender felt to the public defender's office and whether that level of loyalty is sufficient, when combined with certain feelings of pride, to qualify as an "actual conflict."

**{¶ 39}** Seen for what it is, the majority's rule of actual conflict is ambiguous and difficult to apply. As a result, it is contrary to the well-reasoned language and purpose of our decision in *Cole*. *Cole* stands for the proposition that a defendant is entitled to an appellate attorney who would not be presented with a conflict of interest in arguing that a different and unrelated attorney was ineffective. We reached that result because the unrelated attorney was "new counsel who was in no way enjoined from asserting the ineffectiveness of appellant's trial counsel ***." 2

Ohio St.3d at 114, 2 OBR at 663, 443 N.E.2d at 171.  The problems inherent in the actual-conflict rule established today effectively eviscerate the requirement of an independent and capable advocate set forth in *Cole*.

{¶ 40} The majority and the public should make no mistake that the decision of the court today does not further the goals of justice nor does it have the effect of being "hard on crime."  The only effect of today's decision is to degrade the safeguards to the quality of a criminal defendant's representation and the quality of our system of justice overall.

A.W. SWEENEY, J., concurs in the foregoing dissenting opinion.

_____