DECISION AND JUDGMENT ENTRY
This is an appeal from a Lawrence County Common Pleas Court judgment dismissing the petition for postconviction relief filed by Keith La Mar, defendant below and appellant herein.
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE STATE OF OHIO'S POST-CONVICTION SYSTEM DOES NOT COMPLY WITH THE REQUIREMENTS OF DUE PROCESS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE STATE'S MOTION TO DISMISS LA MAR'S PETITION FOR POST-CONVICTION RELIEF WITH RESPECT TO LA MAR'S: 1) CLAIM THAT THE STATE CONCEALED EVIDENCE FAVORABLE TO LA MAR; 2) CLAIM THAT THE STATE DESTROYED EVIDENCE FAVORABLE TO LA MAR; 3) CLAIMS OF JUDICIAL MISCONDUCT."
Our review of the record reveals the following facts pertinent to the instant appeal. On August 21, 1995, following a jury trial, the Lawrence County Common Pleas Court followed the jury's recommendation of the death sentence and sentenced appellant to death for the murders of four inmates during the Lucasville Prison riots.[1] Appellant appealed the trial court's judgment of conviction and sentence, raising nineteen assignments of error. We found no merit to appellant's nineteen assignments of error. Thus, after independently evaluating the propriety of the imposition of the death sentence, we affirmed the trial court's judgment.[2]
On June 13, 1997, during the pendency of appellant's direct appeal, appellant filed a petition for postconviction relief. In his petition, appellant argued that his convictions and sentences are void or voidable for the following reasons: (1) he did not commit the crimes; (2) the state concealed evidence favorable to appellant; (3) law enforcement officers recklessly or in bad faith lost or destroyed material exculpatory evidence; (4) the state failed to prove beyond a reasonable doubt that appellant committed the crimes; (5) the trial judge was improperly biased or committed judicial misconduct; (6) the state denied appellant the opportunity to present favorable witnesses; (7) the state discriminated against appellant on the basis of race in its decision to prosecute, in the grand jury selection, and in the trial selection; (8) the mandatory imposition of the death penalty in a capital crime impermissibly removes the jury's discretion; (9) the trial judge did not conduct a fair and impartial review of his death sentence; (10) the death penalty statute suffers from various constitutional infirmities; (11) the trial court "followed the unwritten policy of the bench in Ohio" to never override a jury's verdict regarding a death sentence and simply "rubber stamps" the jury's decision; (12) the imposition of the death penalty since the enactment of Senate Bill 2 violates the Equal Protection or the Ex Post Facto Clause of the United States and Ohio Constitutions; (13) the special prosecutor prevented the Lucasville inmates from receiving proper and timely legal representation, resulting in coerced statements; (14) the state selectively prosecuted appellant; (15) the trial judge demonstrated bias in favor of the state by "consistently rul[ing] in favor of the State in the vast majority of situations in which his decision would normally lie within the sound discretion of the court"; (16) the prosecutor engaged in misconduct; (17) his trial counsel rendered ineffective assistance; (18) "the cumulative effect of multiple errors in the trial involving judicial misconduct and bias, prosecutorial misconduct, the ineffective assistance of the Petitioner's trial counsel, and numerous legal errors; (19) "residual doubt exists regarding whether Mr. La Mar was involved * * * in the deaths for which he was convicted"; (20) "he did not personally kill" two of the victims; (21) equally or more culpable individuals received more lenient treatment than appellant; (22) the aggravating factors do not sufficiently outweigh the mitigating factors; (23) appellant was an aider or abetter and not a principal offender in the deaths of two of the victims. Appellant requested the trial court to allow him discovery to further develop his claims.
On June 19, 1998, the trial court dismissed appellant's petition without holding an evidentiary hearing. The trial court determined that the doctrine of res judicata barred claims one through ten and claims fourteen through twenty-three. The trial court found that appellant submitted insufficient evidentiary documents to support claim eleven and that claims twelve and thirteen contradicted existing case law.
Appellant filed a timely notice of appeal.
 I
In his first assignment of error, appellant argues that Ohio's postconviction remedy violates the due process rights that theFifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution guarantee. In particular, appellant asserts that the postconviction relief process, through its application of the doctrine of res judicata, fails to provide convicted defendants with "any meaningful opportunity to redress his or her wrongful convictions." Appellant contends that application of the doctrine of res judicata in postconviction relief proceedings "improperly limit[s] the opportunity to raise claims which had not previously been raised."
Appellant further argues that the postconviction relief procedure "improperly allows too little opportunity for factual development of potential, viable claims." Appellant notes that an individual seeking postconviction relief is not entitled to an evidentiary hearing until he produces sufficient evidence outside the record to demonstrate that he is entitled to relief and that a petitioner is not entitled to discovery until the petitioner first demonstrates that an evidentiary hearing is warranted. Thus, appellant claims that a petitioner is caught in a classic "Catch 22" situation: "[H]e cannot obtain a hearing until he demonstrates adequate proof of a constitutional violation, but he cannot utilize the means to gather the proof (discovery) until he submits to the court sufficient proof of the constitutional violations." Thus, appellant requests us to declare R.C. 2953.21
unconstitutional.
We first note that appellant failed to raise the issue regarding the constitutionality of R.C. 2953.21 during the trial court proceedings. Generally, an appellate court will not consider an issue regarding the constitutionality of a statute when the issue was not raised in the trial court. State v. Awan
(1986), 22 Ohio St.3d 120, 489 N.E.2d 277, syllabus ("Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue * * *."). Appellate courts are reluctant to consider a constitutionality challenge to R.C. 2953.21 when the issue was not raised in the trial court. State v. Awkal (Nov. 25, 1998), Cuyahoga App. No. 73267, unreported; State v. Loza (Oct. 13, 1997), Butler App. No. CA96-10-214, unreported; State v. Benner (Aug. 27, 1997), Summit App. No. 1809, unreported. "`However, because of the * * * exacting review necessary where the death penalty is involved, [courts may] reserve the right to consider the constitutional challenges in particular cases.'" State v. Chinn (quoting Statev. Zuern (1987), 32 Ohio St.3d 56, 63, 512 N.E.2d 585, 592).
We note that "statutes enjoy a strong presumption of constitutionality." State v. Cook (1998), 83 Ohio St.3d 404, 409,700 N.E.2d 570, 576. The Cook court continued:
 "`An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, 128 N.E.2d 59, paragraph one of the syllabus. `A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality' Id. at 147, 128 N.E.2d at 63. `That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution.' Xenia v. Schmidt (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus; State ex rel. Durbin v. Smith (1921) 102 Ohio St. 591, 600, 133 N.E. 457, 460; Dickman, 164 Ohio St. at 147, 128 N.E.2d at 63."
Id. All doubts regarding the validity of a statute "are to be resolved in favor of the statute." State v. Gill (1992), 63 Ohio St.3d 53,55, 584 N.E.2d 1200, 1201. The party seeking to have the statute declared unconstitutional bears the burden of proving beyond a reasonable doubt that the statute and a constitutional provision are incompatible. State v. Warner (1990), 55 Ohio St.3d 31,564 N.E.2d 18.
 "R.C. 2953.21, Ohio's Post-Conviction Remedy Act, was enacted in 1965 in response to the United States Supreme Court order that states must provide their prisoners with some `clearly defined method by which they may raise claims of denial of federal rights.' Young v. Reagan (1949), 337 U.S. 235, 239, 69 S.Ct. 1073, 1074, 93 L.E.2d 1333, 1336."
State v. Calhoun (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905,909.
The right to file a postconviction relief petition is a statutory right, not a constitutional right. As the Ohio Supreme Court has stated, "postconviction state collateral review itself is not a constitutional right, even in capital cases." State v.Steffen (1994), 70 Ohio St.3d 399, 639 N.E.2d 67 (citations omitted). More recently, the Ohio Supreme Court has explained:
 "State collateral review is not itself a constitutional right. * * * Further, a postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment. * * * Therefore, a petitioner receives no more rights than those granted by the statute."
Calhoun, supra.
We first address appellant's contention that the postconviction review process, through its application of the doctrine of resjudicata, fails to provide petitioners with any meaningful collateral review of their convictions. Appellant cites several cases from the United States Court of Appeal for the Sixth Circuit to support his claim. See Keener v. Ridenour (C.A.6, 1979), 594 F.2d 581; Allen v. Perini (C.A.6, 1970), 424 F.2d 134;Coley v. Avis (C.A.6, 1967), 381 F.2d 870. In each case, the Sixth Circuit has expressed its concern that applying the doctrine of res judicata to postconviction relief proceedings fails to adequately protect a convicted defendant's rights. As the court noted in State v. Lewis (Dec. 3, 1998), Cuyahoga App. No. 73736, unreported, however, the Sixth Circuit's disagreement with the Ohio Supreme Court's interpretation of the postconviction relief statute and process does not overrule existing Ohio case law. The Lewis court stated:
 "The Sixth Circuit Court of Appeals' dissatisfaction with Ohio's postconviction relief process and the Perry decision does not require us to hold the postconviction relief process invalid. Perry remains good law in this State. See State v. Szefcyk
(1996), 77 Ohio St.3d 93, 96, 671 N.E.2d 233. Furthermore, the postconviction relief process has been held to be constitutionally sound. See State v. Sklenar (1991), 71 Ohio App.3d 444, 594 N.E.2d 88, jurisdictional motion overruled (1992), 63 Ohio St.3d 1448, 589 N.E.2d 392."
As further support for his argument that Ohio's postconviction relief process is constitutionally infirm, appellant notes that only one person sentenced to death has been granted postconviction relief. We note, however, that at least one other court of appeals has rejected the same argument. In State v.Fautenberry (Dec. 31, 1998), Hamilton App. No. C-971017, unreported, the defendant similarly argued that Ohio's postconviction scheme violated the requirements of due process, noting that only one individual who has been sentenced to death since Ohio re-enacted the death penalty has been granted postconviction relief. The Fautenberry court, however, disagreed, stating:
 "As this court has repeatedly stated, a postconviction proceeding is not an appropriate vehicle for `mere hypothesis and a desire for further discovery.' State v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811, unreported. Nor is it intended as a forum to litigate constitutional issues which could have been raised on direct appeal, thus relegating `courts to disposition of the action on technicalities or collateral issues, as opposed to the merits.' State v. Roberts (1982), 1 Ohio St.3d 36, 39, 437 N.E.2d 598, 601. There is, further, no constitutional right to postconviction state collateral review. State v. Steffen (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67, 76. As the court noted in Steffen, `death row inmates have seized upon and used to their advantage' a `web of procedures so involved they threaten to engulf the penalty itself.' Id. at 407, 639 N.E.2d at 73."
Appellant further contends that a postconviction relief petitioner always faces an uphill burden and will almost always fail in his claims for relief. Appellant asserts that the reversal rate of trial court decisions denying postconviction relief is "distressing." Appellant claims that the Ohio Public Defender's Office informal review of postconviction relief claims involving death sentences reveals that out of sixty-five cases, only eight had been reversed and remanded for further review.[3] We do not believe, however, that such a statistic demonstrates the unconstitutionality of the postconviction process. Moreover, "we do not share appellant's rather dismal opinion of the efficacy of the postconviction system." State v.Wiles (Apr. 10, 1998), Portage App. No. 97-P-0028, unreported. The Wiles court continued:
 "Although rare, there are instances where postconviction relief is appropriate. * * * These cases demonstrate that a petitioner's chance of success depends more on the merit[s] of [the] claim[s] than on the procedural obstacles he faces."
Finally, as we explain in our discussion of appellant's second assignment of error, we do not believe that the failure to afford a postconviction relief petitioner discovery during the initial proceeding to determine whether an evidentiary hearing is warranted renders the postconviction relief process unconstitutional. The cases are in agreement that the lack of discovery during the initial stages of the postconviction process is based upon sound logic and does not violate any constitutional rights of the petitioner. Consequently, we do not agree with appellant that Ohio's postconviction relief process is unconstitutional. See Sklenar, supra.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant contends that the trial court erred by dismissing his petition without conducting an evidentiary hearing. Appellant asserts that the trial court should have permitted appellant to engage in the discovery process in order to substantiate the claims raised in his petition.
Appellant correctly notes that postconviction relief proceedings are civil in nature. Given the foregoing proposition, argues appellant, discovery should be permitted, as it is in other civil proceedings. Appellant argues that "[n]o rational reason exists to distinguish the present post-conviction case which is civil in nature from other civil proceedings in which discovery is granted as of right." Thus, similar to the arguments raised in appellant's first assignment of error, appellant argues that the trial court's decision not to permit discovery violates appellant's rights to equal protection and due process.
Appellant further argues that the record and the evidence that he submitted along with his postconviction relief petition demonstrate that substantive grounds for relief exists with respect to his claims that: (1) the state concealed favorable evidence;[4] (2) the state destroyed favorable evidence;[5]
and (3) the trial judge committed judicial misconduct.[6]
The postconviction relief statute, R.C. 2953.21, provides a remedy for a collateral attack upon judgments of conviction claimed to be void or voidable under the United States or the Ohio Constitution. See R.C. 2953.21 (A)(1); See, e.g., Calhoun,supra; Freeman v. Maxwell, Warden (1965), 4 Ohio St.2d 4,210 N.E.2d 885. To prevail on a postconviction relief petition, a petitioner must establish that he suffered an infringement or deprivation of his constitutional rights. See R.C. 2953.21
(A)(1); See, e.g., Calhoun.
The postconviction statute is not intended, however, to permit "a full blown retrial of the [petitioner's] case." State v.Robison (June 19, 1989), Pickaway App. No. 88 CA 15, unreported. Rather, "adjudication is confined solely to claimed constitutional violations" and "claimed procedural or other errors at trial not involving constitutional rights are not relevant or subject to review." Id. see, also, State v. Akers
(Feb. 2, 1998), Lawrence App. No. 97 CA 22, unreported.
The filing a petition for postconviction relief does not automatically entitle the petitioner to an evidentiary hearing. See, e.g., Calhoun, 86 Ohio St.3d at 282, 714 N.E.2d at 910
(citing State v. Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169). The trial court first must determine whether substantive grounds for relief exists. R.C. 2953.21 (C); Calhoun,86 Ohio St.3d at 282-283, 714 N.E.2d at 910. Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence to demonstrate that the petitioner suffered a violation of the petitioner's constitutional rights. Id.; Statev. Jackson (1980), 64 Ohio St.2d 107, 112, 413 N.E.2d 819, 823, syllabus. Moreover, before a hearing is warranted, the petitioner must demonstrate that the claimed "errors resulted in prejudice."Calhoun, 86 Ohio St.3d at 283, 714 N.E.2d at 910. The decision to grant the petitioner an evidentiary hearing is left to the sound discretion of the trial court. See Calhoun, 86 Ohio St.3d at 284,714 N.E.2d at 911 (stating that the postconviction relief "statute clearly calls for discretion in determining whether to grant a hearing")
In determining whether substantive grounds for relief exist, the trial court must examine the petition, any supporting affidavits, any documentary evidence, and all the files and records from the case. R.C. 2953.21 (C). In reviewing any supporting affidavits, the trial court need not accept the affidavits as true. Calhoun, 86 Ohio St.3d at 284,714 N.E.2d at 911. Rather, a trial court may assess the credibility of the affiant. As the court explained in Calhoun:
 "[I]n reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact. To hold otherwise would require a hearing for every postconviction relief petition. Because the statute clearly calls for discretion in determining whether to grant a hearing, accepting all supporting affidavits as true is certainly not what the statute intended."
Calhoun, 86 Ohio St.3d at 284, 714 N.E.2d at 911.[7]
A hearing is not warranted for claims that were raised or could have been raised on direct appeal. State v. Reynolds (1997),79 Ohio St.3d 158, 161, 679 N.E.2d 1131, 1133. Res judicata will operate as a bar to any claim that was raised or could have been raised on direct appeal. See, e.g., State v. Lentz (1994),70 Ohio St.3d 527, 639 N.E.2d 784; State v. Perry (1967), 10 Ohio St.2d 175,226 N.E.2d 104, syllabus. As the court explained inPerry:
 "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on an appeal from that judgment."
Initially, we agree with the trial court's decision that resjudicata barred the three claims appellant addresses in his second assignment of error. Appellant raised or could have raised the issues on direct appeal. The claims may not be entertained in a postconviction relief petition.
Although we believe that our decision that res judicata barred appellant from raising the three claims disposes of appellant's second assignment of error, we nevertheless will consider appellant's argument that the trial court should have permitted him discovery to further develop the issues.
A postconviction relief petitioner is not entitled to discovery to help the petitioner establish substantive grounds for relief. As the court noted in State v. Ashworth (Nov. 8, 1999), Licking App. No. 99-CA-60, unreported:
 "R.C. 2953.21 (C) expressly provides that the initial determination of whether a postconviction petition states substantive grounds for relief is to be made based upon the petition and any supporting affidavits, together with the case files and records. Therefore, a petitioner for postconviction relief is not entitled to discovery during the initial stages of a postconviction proceeding."
In State v. Kinley (Nov. 12, 1999), Clark App. No. 99 CA 20, unreported, the court likewise held that a postconviction relief petitioner is not entitled to discovery during the initial process of determining whether to grant an evidentiary hearing. In reaching its decision, the Kinley court rejected the petitioner's argument that the general rules of civil procedure apply to postconviction proceedings and permit discovery during the initial stages of the process. The court noted that the civil rules do not apply to "special proceedings." The Court stated:
"Civ.R. 1 (A) provides:
 These rules prescribe the procedure to be followed in all courts of this state in the exercise of civil jurisdiction at law or in equity, with the exceptions stated in subdivision (C) of this rule.
 Civ.R. 1 (C) provides that the civil rules, `to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * in all other special statutory proceedings.' Postconviction proceedings are special statutory proceedings, and R.C. 2953.21 makes no provision for the application of the Ohio Rules of Civil Procedure. Thus, * * * the civil rules do not entitle a petitioner to discovery in postconviction proceedings."
 State v. Kinley (Nov. 12, 1999), Clark App. No. 99 CA 20, unreported (citing State v. Spirko (1998), 127 Ohio App.3d 421,713 N.E.2d 60; State v. Smith (1986), 30 Ohio App.3d 138, 140,506 N.E.2d 1205; State v. Chinn (Aug. 21, 1998), Montgomery App. No. 16764, unreported).
Like the courts in Kinley and Ashworth, we do not believe that the postconviction relief petitioner is entitled to conduct discovery during the initial stages of the proceedings. As theAshworth court noted, the statute expressly outlines the material the trial court shall consider when determining whether to grant a hearing.
We note that appellant cites State v. Ostot (Mar. 1, 1989), Clark App. No. 2500, unreported, as support for his argument. InOstot, the court held that a postconviction relief petitioner is entitled to conduct discovery during the initial stage of the postconviction relief process. However, in Chinn, supra, the Second District overruled Ostot. See State v. Hooks (Oct. 30, 1998), Montgomery App. Nos. 16978, 17007, unreported.
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
[1] Additional facts may be found in our opinion from appellant's direct appeal. See State v. La Mar (Aug. 13, 1998), Lawrence App. No. 95 CA 31, unreported.
[2] We note that the death penalty review process has been amended to remove intermediate appellate court jurisdiction over direct appeals from a sentence of death. See, generally, State v.Smith (1999), 80 Ohio St.3d 89, 95, 684 N.E.2d 668, 678. The amendment applies to offenses committed on or after January 1, 1995. Because appellant committed the offenses prior to January 1, 1995, the amendment did not apply and this court properly considered appellant's direct appeal.
[3] We note that in State v. Bradley (Dec. 2, 1996), Scioto App. No. 95 CA 2364, unreported, this court reversed a trial court's dismissal of a postconviction relief petition in a case which involved a death sentence.
[4] Appellant raised the argument that the state concealed favorable evidence in his second claim for relief. The trial court determined that the doctrine of res judicata barred the claim that the state concealed favorable evidence. The court noted that appellant previously had raised the issues sets forth in this claim both in his motion for a new trial and on direct appeal.
[5] Appellant raised the argument that the state destroyed favorable evidence in his third claim for relief. The trial court found appellant's third claim for relief to be based upon material in the record, and thus, concluded that res judicata
barred appellant's third claim for relief. Moreover, the trial court found the claims lacking in evidentiary support and determined that the claims were speculative in nature.
[6] Appellant raised the argument that the trial court committed judicial misconduct in his fourth claim for relief. With respect to appellant's fourth claim for relief, the trial court found that the claim was based upon evidence in the record and that appellant raised the issue on direct appeal in his eighth assignment of error.
[7] The Calhoun court noted as follows with respect to evaluating the credibility of an affidavit:
 presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. Id. at 754-756, 651 N.E.2d at 1323-1324.
 Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court. A trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur."
Calhoun, 86 Ohio St.3d at 284-85, 714 N.E.2d at 911-12.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Evans, J.: Concur in Judgment Opinion
For the Court
 BY: _____________________ Pete B. Abele Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.