OPINION
{¶ 1} Andre S. Myers appeals from the denial of his petition for post-conviction relief. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} Following a jury trial, appellant was convicted of kidnapping with a sexual motivation specification, rape with a sexually violent predator specification, aggravated burglary and three counts of burglary. On October 17, 2002, the trial court sentenced appellant to a total of 23 years in prison. The sentence was journalized October 23, 2002.
 {¶ 3} We affirmed appellant's conviction on August 5, 2003. Appellant unsuccessfully attempted an appeal to the Ohio Supreme Court. Review was denied on December 10, 2003.
 {¶ 4} On October 6, 2004, appellant filed a petition for post-conviction relief in the trial court. Appellant raised two claims for relief: first, that he received ineffective assistance of counsel and second, that the trial court improperly imposed a non-minimum, CONSECUTIVE SENTENCE IN VIOLATION OF Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531.
 {¶ 5} On February 16, 2005, the trial court denied the petition. The trial court found that appellant's ineffective assistance of counsel claim was barred by the doctrine of res judicata. Additionally, the court found that the petition failed to present sufficient evidence to properly raise the ineffectiveness claim. The court found there was no jury-trial right to determine whether consecutive sentences were appropriate under Ohio law. Finally, the court found the petition was untimely in light of the requirements of R.C. 2953.21(A)(2). Appellant appeals from that judgment.
 {¶ 6} Appellant raises three assignments of error:
I. The trial court erred by denying appellant's claim of ineffective assistance of trial counsel as barred by res judicata.
II. The trial court erred by denying appellant's petition as being untimely filed.
III. The trial court erred in the application of Blakely v. Washington to appellant's sentence stating there is no jury trial right to consecutive sentence findings.
 {¶ 7} In Ohio, R.C. 2953.21 governs collateral attack upon a criminal conviction. Collateral attack under that statute is limited to errors of constitutional dimension. Errors in the application of statutes or procedural rules are not cognizable in proceedings under R.C. 2953.21.
 {¶ 8} Appellant's first assignment of error raises the question of whether the trial court properly applied the doctrine of res judicata to bar appellant from litigating his ineffective assistance of counsel claim in his petition for post-conviction relief. Appellant argues that res judicata does not bar his ineffectiveness claim because the attorney who handled his direct appeal was in the same office as his trial attorney and could not be expected to adequately explore and present a claim of ineffective trial counsel.
 {¶ 9} The doctrine of res judicata bars a litigant from re-litigating an issue that was or could have been raised in an earlier proceeding between the same parties. Res judicata applies in post-conviction proceedings. Therefore, where an issue was or could have been raised on direct appeal, res judicata bars a defendant from raising and re-litigating that issue in proceedings under R.C. 2953.21. State v.Perry (1967), 10 Ohio St.2d 175; State v. Reynolds (1997),79 Ohio St.3d 158.
 {¶ 10} Depending upon the circumstances, the doctrine of res judicata may apply to claims of ineffective assistance of counsel. Due to the obvious, inherent conflict of interests, trial counsel cannot be expected to explore and present on appeal the issue of counsel's own ineffectiveness at trial. "[C]ounsel cannot realistically be expected to argue his own incompetence." State v. Cole (1982), 2 Ohio St.3d 112, 113, fn.1. Therefore, where the same attorney handles both the trial and an appeal from a conviction, the doctrine of res judicata does not preclude the defendant from raising an ineffectiveness claim in a later petition for post-conviction relief.
 {¶ 11} Where new counsel pursues a direct appeal from a judgment of conviction and the issue of the effectiveness of trial counsel is capable of being determined from the record, res judicata will bar a defendant from re-litigating that issue in a petition for post-conviction relief.Cole, supra. New appellate counsel does not labor under the same conflict of interests in presenting an ineffectiveness claim as would trial counsel.
 {¶ 12} However, where appellate counsel is from the same private law firm as trial counsel, the conflict of interests continues. "Ohio's Code of Professional Responsibility states that a lawyer's conflict of interest is imputed to his law firm. DR 5-105(D)." State v. Lentz
(1994), 70 Ohio St.3d 527, at 530. Therefore, if trial and appellate counsel are members of the same private "law firm," the doctrine of res judicata does not bar a defendant from raising an ineffectiveness claim in a petition for post-conviction relief filed pursuant to R.C. 2953.21.
 {¶ 13} Lentz distinguished private counsel from counsel employed in a public defender's office. Where appellate counsel in a public defender's office handles the direct appeal of a case that has been defended at trial by another member of that office, there is no per se rule that a conflict exists. Instead, the trial court must conduct a case-by-case analysis to determine whether an actual conflict of interest existed that kept appellate counsel from effectively arguing the ineffectiveness of trial counsel. The actual conflict of interest test announced in Lentz is employed only in the case where appellate and trial counsel are both employed in a public defender's officer, not to private counsel in the same law firm. State v. Bowling (Apr. 28, 1998), Franklin App. No. 97APA07-887.
 {¶ 14} Less clear is whether the term "law firm," as employed inLentz, was intended to differentiate between a formal organization of attorneys practicing under a legal entity, such as a partnership, corporation or legal professional association, or whether that term includes any group of attorneys that may be associated in some fashion, such as by renting office space from another practitioner, or by sharing the cost of office space and expenses.
 {¶ 15} The term "law firm" has been defined as:
An association of lawyers who practice law together, [usually] sharing clients and profits, in a business traditionally organized as a partnership but often today as either a professional corporation or a limited-liability company. * * *
Black's Law Dictionary, (7 Ed. 1999) 891. The term "law firm" connotes some degree of organizational formality.
 {¶ 16} In that light, Lentz offers some instructive language:
* * * [A]n important question is whether a private law firm and a county public defender's office are analogous in regard to the question at hand. At the threshold level, the lack of a financial stake in the case's outcome sets the public defender apart from the private firm. A lawyer in private practice who is still being paid by a defendant would be less willing to admit that his firm's representation in an earlier stage of the proceedings was substandard. Also, unlike the public defender, the private attorney is in competition with other law firms for clients' business, so diminished reputation more directly affects the finances of private sector attorneys.
Id. at 530.
 {¶ 17} While not the only factor considered, it is apparent that the Ohio Supreme Court found financial gain a significant basis for distinguishing publicly employed attorneys from those in the private sector. It is arguable that the same reasoning can be employed when the financial interests of attorneys in the private sector may be at stake even though their relationship does not share the formality of a partnership or professional association.
 {¶ 18} We need not answer that question in this case. The record on appeal includes a copy of the transcript of proceedings below, including the October 17, 2002 sentencing hearing. After sentence was pronounced and defense counsel advised that appellant wished to appeal his conviction, the following discussion took place:
MR. SHAMANSKY: Your Honor, I would ask you to consider appointing Lisa Tome who is a very capable lawyer in my office. And I'll be able to assist her, of course, with the appeal.
THE COURT: I have a concern about that and help me out.
MR. SHAMANSKY: Yes, sir.
THE COURT: One of the basis [sic] for appeal is frequently ineffective assistant [sic] counsel. How is Ms. Tome going to be able to do that if she's working for you?
MR. SHAMANSKY: Let me ask Mr. Myers a quick question.
THE COURT: Mr. Shamansky, I didn't mean to interrupt, but there is one observation I would like to make of Mr. Myers. I am familiar with Ms. Tome's work and it is very good. I have no reason to believe that under the code of professional conduct that she understands and I'm sure would follow. If she felt that there was a conflict at any point in preparing the appeal and representing Mr. Myers, she would notify the Court. In that case, I would appoint someone else to take her place.
MR. SHAMANSKY: Absolutely, Your Honor. And I can also state categorically that if I thought I had botched Mr. Myers' case I would so advise him and urge him to base an appeal based on my ineffectiveness. But I don't think that's going to be an issue, frankly.
THE COURT: Unless I hear an objection from your client I will — I intend to appoint Ms. Tome.
MR. MYERS: Judge Bessey, I'm happy with Mrs. Tome.
* * *
THE COURT: Thank you. Mr. Shamansky, I'm going to ask that you prepare an entry regarding Ms. Tome. Thank you.
(Tr. 35-36.)
 {¶ 19} While the record does not clearly indicate whether counsel were members of the same law firm, were members of a professional association, were employer and employee or simply shared office space and expenses, an analysis of the precise relationship of counsel is not necessary to our determination. Here, the record shows that appellate counsel practiced law in the same office as trial counsel and trial counsel stated that he would be able to assist appellate counsel with the appeal. The record is sufficient to find that the doctrine of res judicata should not be employed to bar appellant's claim of ineffective assistance of counsel in this case.
 {¶ 20} This does not suggest that counsel's performance in this case was in any way deficient. The issue presented by the first assignment of error is not whether trial counsel was, or was not, effective in his representation of appellant. Instead, the question presented by the first assignment of error is whether the trial court properly applied the doctrine of res judicata to bar appellant from raising his ineffectiveness claim.
The merits of the claim are not before us. We hold that res judicata did not bar appellant from asserting his ineffective assistance of counsel claim below.
 {¶ 21} Appellee argues that the proceedings show that appellant waived any conflict of interest that might have existed. Appellee points out that appellant was made aware of the possibility of a conflict of interests, but chose to accept the services of Ms. Tome for his appeal.
 {¶ 22} On review, we are not convinced that the record of the proceedings supports a finding that appellant waived any arguable conflict of interest. Whether counsel's performance may be considered ineffective within the meaning of the Sixth Amendment requires more analysis than a few moments discussion at a sentencing hearing. Even the most experienced counsel is capable of making professional errors during the course of a representation; errors that, on fair assessment of the circumstances of the challenged conduct, may support an ineffectiveness claim. A thorough review of all proceedings is required before appellate counsel can determine if the potential exists for a claim that counsel's performance fell below the standard in a given case.
 {¶ 23} Moreover, in all probability, a client who is not trained or experienced in the law will lack the ability to identify a deficiency in counsel's performance. The brief inquiry following sentencing in this case does not support appellee's claim that appellant waived any conflict that might exist.
 {¶ 24} While the doctrine of res judicata was not applicable to these proceedings, reversal in this case is not required. It is a fundamental rule that appellate courts review judgments, not reasons for judgments. Even though we disagree with the trial court regarding the applicability of res judicata, we find that there are other valid grounds that support dismissal of the post-conviction petition. Based on our resolution of the second and third assignments of error, appellant's first assignment of error becomes moot.
 {¶ 25} Appellant's second and third assignments of error are interrelated and will be addressed together.
 {¶ 26} The time within which a collateral attack may be brought under R.C. 2953.21 is limited by the terms of that statute. In general, a petition for post-conviction relief must be filed within 180 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal from the conviction. If no direct appeal is taken, the petition must be filed within 180 days after the expiration of the time for direct appeal. R.C. 2953.21(A)(2).
 {¶ 27} Appellant was sentenced on October 23, 2002. On August 5, 2003, we affirmed the judgment of conviction in appellant's direct appeal as of right. Appellant filed his petition for post-conviction relief on October 6, 2004, almost two years after his sentence and over one year after his conviction was affirmed. Appellant's collateral attack was filed well after the time limits prescribed by R.C. 2953.21(A).
 {¶ 28} In general, a court lacks jurisdiction to entertain a petition filed after the time limits of R.C. 2953.21(A)(2). The timeliness requirements of R.C. 2953.21(A)(2) are tempered to a degree by a narrow exception contained in R.C. 2953.23(A)(1). That section provides, in pertinent part, as follows:
Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:
(1) Both of the following apply:
(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.
Division (A)(2) of R.C. 2953.23 involves DNA testing under R.C.2953.71 through 2953.82 and is not applicable here. Only division (A)(1) is relevant in this case.
 {¶ 29} To vest a trial court with jurisdiction to consider an untimely petition for post-conviction relief, a petitioner must demonstrate that one of the exceptions contained in R.C. 2953.23(A) applies. State v.Hamilton, Franklin App. No. 03AP-852, 2004-Ohio-2573. If the petitioner fails to meet that burden, R.C. 2953.21(A)(2) continues to apply and jurisdiction in the trial court remains lacking.
 {¶ 30} Appellant's petition filed in the trial court raised two separate issues. First, appellant claimed that he was denied the effective assistance of counsel at trial because trial counsel failed to challenge evidence seized pursuant to search warrants. Second, appellant asserted that the trial court committed error in sentencing him to greater than the minimum sentence authorized by law. Both issues allege constitutional claims under the Sixth Amendment: right to the effective assistance of counsel and the right to trial by jury on factual determinations under certain sentencing schemes as determined in
Apprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348, andBlakely, supra. {¶ 31} Appellant's first claim is based upon his belief that trial counsel should have moved to suppress evidence seized pursuant to the warrant. Appellant believes that the warrants were defective through certain deficiencies and misstatements and that the ensuing search was conducted in violation of his rights under the Fourth Amendment. In his petition, appellant argued that the search warrants used to obtain evidence did not sufficiently describe the items to be seized; that the description of the victim's attacker did not match that of appellant,[1] and that the warrants were based on false information provided by investigators.[2]
 {¶ 32} Appellant admits in his brief that, while awaiting trial, he advised his trial attorney of the alleged deficiencies and misstatements in the search warrant affidavits. (Appellant's brief, at 2.) Appellant was also aware that trial counsel did not file a motion to suppress evidence seized pursuant to the search warrants. Therefore, at the time of his trial, appellant was aware of the facts upon which he now bases his claim for relief.
 {¶ 33} Appellant's awareness of the facts he relies on for his claim of ineffective trial counsel dooms his attempt to bring his petition within the exception provided by R.C. 2953.23(A)(1). Awareness of the facts upon which a claimed deprivation of a right is based is the key to whether a petitioner meets the exception contained in R.C. 2953.23(A)(1). It is the awareness of the facts, not necessarily awareness of the legal significance thereof, that matters. State v. Collins (Nov. 2, 2001), Montgomery App. No. 18796.
 {¶ 34} Because appellant failed to demonstrate that he was unavoidably prevented from discovery of the facts upon which he now bases his claim of constitutional deprivation, appellant has not met the requirements of R.C. 2953.23(A)(1)(a). Therefore, the trial court had no jurisdiction to consider appellant's ineffective assistance of counsel claim.
 {¶ 35} Appellant also argues that he qualifies for the second exception provided by R.C. 2953.23(A)(1) to the filing requirements of R.C. 2953.21(A)(2). An otherwise untimely filing may be excused if, subsequent to the period within which a petition must be filed, "the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right." R.C. 2953.23(A)(1)(a). Appellant believes that the decision in Blakely issued on June 24, 2004, applies to his case and that his right to trial by jury was denied when the trial court sentenced him to consecutive sentences that exceeded the minimum sentence provided by statute. Appellant's reliance upon Blakely
is misplaced.
 {¶ 36} In Blakely, the Supreme Court applied existing law announced inApprendi. Blakely did not recognize a new federal or state constitutional right. State v. Cruse, Franklin App. No. 05AP-125, 2005-Ohio-5095. Because Blakely did not announce a new right, the exception provided in R.C. 2953.23(A)(1)(a) is not applicable and does not excuse appellant's failure to meet the time requirements of R.C. 2953.21(A)(2).[3]
 {¶ 37} Second, even if Blakely had recognized a new federal or state right, Blakely is not applied retroactively to persons in appellant's situation. Appellant mounted a collateral attack upon his conviction.Blakely does not apply retroactively to cases seeking collateral review of a conviction. In re Dean (C.A.11, 2004), 375 F.3d 1287. The Eighth District Court of Appeals also has held that Blakely does not apply retroactively to claims presented under R.C. 2953.21. See State v. Webb,
Cuyahoga App. No. 85318, 2005-Ohio-3839, citing In re Dean, supra; Cuevasv. Derosa (C.A.1, 2004), 386 F.3d 367; United States v. Stoltz (D.Minn. 2004), 325 F.Supp.2d 982; United States v. Stancell (D.D.C. 2004),346 F.Supp.2d 204; United States v. Traeger (N.D.Ill. 2004),325 F.Supp.2d 860.
 {¶ 38} We agree with the reasoning of both In re Dean and Webb,
supra. The Blakely decision does not apply retroactively to cases on collateral review. Therefore, even if Blakely had recognized a new right, the decision is not applicable to appellant's collateral attack upon his conviction and sentence.
 {¶ 39} Finally, and fundamentally, we have held that the rule announced in Blakely does not prohibit the imposition of non-minimum or consecutive sentences that are authorized under the Ohio sentencing statutes. State v. Abdul-Mumin, Franklin App. No. 04AP-485, 2005-Ohio-522. In so ruling, we are in accord with decisions in ten of Ohio's twelve appellate districts. See State v. Jordan, Marion App. No. 9-05-15, 2005-Ohio-5039, (3rd District); State v. Eye, Washington App. No. 05CA13, 2005-Ohio-5317, (4th District); State v. Smith, Licking App. No. 04 CA 11, 2005-Ohio-5473, (5th District); State v. Johnson, Lucas App. No. L-04-1258, 2005-Ohio-5459, (6th District); State v. Davis, Cuyahoga App. No. 85477, 2005-Ohio-5544, (8th District); State v. Wright, Summit App. No. 22599, 2005-Ohio-5496, (9th District); State v. Anderson, Lake App. No. 20040-L-157, 2005-Ohio-4896, (11th District); and State v.Borders, Clermont App. No. CA2004-12-101, 2005-Ohio-4339, (12th
District). Only the First and Second Districts have applied Blakely to mandate minimum sentences under Ohio law. See State v. Weber, Hamilton App. No. C-040820, 2005-Ohio-4854, (1st District); and State v. Frierson,
Montgomery App. No. 20535, 2005-Ohio-4199, (2nd District).
 {¶ 40} We continue to adhere to our holding in Abdul-Mumin. Blakely
does not render unconstitutional a sentence greater than the minimum sentence or consecutive sentences that are authorized under Ohio law. Therefore, even were appellant's petition not time barred, the argument that his sentence is constitutionally infirm has no merit. The second and third assignments of error are overruled.
 {¶ 41} In conclusion, appellant has failed to show that his petition for post-conviction relief, untimely under R.C. 2953.21(A)(2), falls within either of the exceptions contained in R.C. 2953.23(A). Because appellant's petition was time-barred, the trial court lacked jurisdiction to consider the petition for post-conviction relief. Therefore, appellant's second and third assignments of error are overruled, the first assignment of error is moot, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and PETREE, JJ., concur.
[1] Appellant indicates that the affidavit in support of the warrant described the victim's attacker as a black man, 25 to 34 years of age, 6 to 6'2", weighing about 180 pounds and wearing a gray cap, gray shirt and black or dark blue pants. Appellant states that he is a black man, 40 years of age, 5'11" and 220 pounds.
[2] In the petition below, appellant complained that the search warrant affidavit stated that appellant had been arrested for voyeurism, but he had only been convicted of disorderly conduct. However, exhibit No. H, attached to appellant's petition reveals that he was arrested for voyeurism in 1989 and later convicted of disorderly conduct. Hence, the affidavit was not false.
[3] Appellant relies upon a trial court ruling in State v.Featherstone, Franklin C.P. No. 99CR-6248, for the proposition that aBlakely claim meets the R.C. 2953.23(A)(1) exception to the timeliness requirements of R.C. 2953.21(A)(2). In Featherstone, the trial court made no analysis of whether Blakely recognized a new federal or state right. Instead, the court simply accepted that the petition fit the exception of R.C. 2953.23(A)(1), then proceeded to reject the merits of the claim. Moreover, this court's decisions are controlling precedent. Under Cruse,
supra, we held that Blakely did not recognize a new federal or state right. Hence, the trial court's decision in Featherstone does not support appellant's argument.