[Cite as *State v. Zeigler*, 2016-Ohio-8370.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Sheila G. Farmer, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 16CA9 |
| LADON ZEIGLER | : |  |
|  | : |  |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal appeal from the Knox County Court of Common Pleas, Case No. 16CR01-0005

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     December 22, 2016


APPEARANCES:

For Plaintiff-Appellant

CHARLES MCCONVILLE
Knox County Prosecutor
117 East High Street, Ste. 234
Mount Vernon, OH 43050

For Defendant-Appellee

JAMES GILES
109 East High Street
Mount Vernon, OH 43050

*Gwin, J.*

{¶1} Plaintiff-appellant the State of Ohio appeals the April 28, 2016 Judgment Entry of the Knox County Court of Common Pleas granting defendant-appellee Landon Zeigler's ["Zeigler"] motion to suppress.

*Facts and Procedural History*

{¶2} On October 29, 2015, Zeigler was a passenger in a vehicle operated by Daniel May on Knox County Road 66. May failed to negotiate a curve and ran off the right side of the roadway striking a tree. EMS, firefighters, a Knox County deputy sheriff and Trooper Winans of the Ohio State Highway Patrol all were called to the scene. The trooper was in charge of the accident investigation. Prior to Trooper Winans' arrival, May had been taken from the scene in preparation for transport to Columbus by helicopter. Zeigler having suffered a minor leg injury was still at the scene on a stretcher.

{¶3} The vehicle in which Zeigler was a passenger was disabled and a tow truck was called. Trooper Winans proceeded to do an inventory search of the vehicle. Subsequent to the trooper's decision to tow, Zeigler asked a firefighter to retrieve his backpack from the vehicle. The backpack was over the headrest of the passenger's seat. The trooper determined the backpack would not be returned to Zeigler until an inventory search of the contents of the backpack was completed. Among the items found in Zeigler's backpack were a firearm, pills, and fireworks, which led to the indictment in this case.

{¶4} Zeigler's girlfriend arrived at the scene and asked the trooper if she could retrieve Zeigler's sunglasses from the vehicle. Trooper Winans located the sunglass

case, searched it, and found some loose marijuana. The backpack and sunglasses/case were given to Zeigler's girlfriend.

{¶5} The Vehicle Inventory/Custody Report (Form HP-25D) listed the backpack but not the contents. The form also did not list the items returned to Zeigler's girlfriend.

{¶6} Ziegler was subsequently indicted on two counts of Having Weapons While Under Disability, felonies of the third degree, in violation of R.C. 2923.13; one count of Illegal Manufacture of Fireworks, a felony of the third degree, in violation of R.C. 3743.60; one count of Improperly Handling a Firearm, a felony of the fourth degree, in violation of R.C. 2923.16(B); one count of Possession of Drugs, a felony of the fifth degree, in violation of R.C. 2925.11(A); and one count of Possession of Marijuana, a minor misdemeanor, also in violation of R.C. 2925.11(A).

{¶7} On February 23, 2016, Zeigler filed a motion to suppress evidence. The state responded with a memorandum in opposition on April 15, 2016. A suppression hearing was held on April 18, 2016. On April 28, 2016, the Knox County Court of Common Pleas filed a judgment entry granting Zeigler's Motion to Suppress. On May 5, 2016, the state filed a Notice of Appeal with the required certifications under Crim.R. 12(K) that the appeal is not taken for the purposes of delay, and that the ruling on the Motion to Suppress has rendered the State's proof so weak that any reasonable possibility of effective prosecution has been destroyed.

{¶8} The state raises one assignment of error,

{¶9} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DID NOT APPLY THE APPROPRIATE TEST OR CORRECT LAW TO THE FACTS OF THIS CASE."

*Law and Analysis*

{¶10}  Appellate review of a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility.  See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings.  See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996).  However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard.  See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996).  That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra.  Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers."  *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**Search of passenger's belongings.**

{¶11}  In *Wyoming v. Houghton,* the United States Supreme Court noted,

Passengers, no less than drivers, possess a reduced expectation of

privacy with regard to the property that they transport in cars, which "trave[l]

public thoroughfares," *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), "seldom serv[e] as ... the repository of personal effects," ibid., are subjected to police stop and examination to enforce "pervasive" governmental controls "[a]s an everyday occurrence," *South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and, finally, are exposed to traffic accidents that may render all their contents open to public scrutiny.

526 U.S. 295, 303, 119 S.Ct. 1297, 143 L.Ed.2d 408(1999). In *Houghton* the court concluded,

We hold that police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search.

526 U.S. 295, 307, 119 S.Ct. 1297, 143 L.Ed.2d 408.

**{¶12}** In the case at bar, the state did not argue Trooper Winans' had probable cause to search May's car or that the trooper had a reason to believe contraband or evidence of criminal wrongdoing was hidden in the car. Rather the state argued that the search of Zeigler's backpack was justified as part of an inventory search of May's car.

**Inventory search.**

**{¶13}** "Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities." *State v.* Mesa, 870 Ohio St.3d 105, 108, 1999-Ohio-253, 717 N.E.2d 329, *citing South Dakota v. Opperman*, 428 U.S. 364,

369 (1976). "Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated." *Mesa at 108, citing Opperman* at 370. "Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness." *Mesa* at 108.

{¶14} In *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743(1992), the Ohio Supreme Court analyzed and followed various United States Supreme Court decisions regarding inventory searches and held:

1. To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. (*South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)

2. If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. (*Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)"

*Accord, State v. Greeno*, 5th Dist. Morgan No. 14AP002, 2014-Ohio-4718, ¶ 18-19.

{¶15} The Ohio Supreme Court has stated, "the existence of a reasonable policy or procedure governing inventory searches in general is insufficient to justify the opening of closed containers encountered during the inventory search." *Hathman*, 65 Ohio St.3d at 408, 604 N.E.2d 743. It went on to state that,

> If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice *specifically governing the opening of such containers.*

*State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992) (emphasis added), paragraph two of the syllabus.

{¶16} The Ohio Supreme Court in *Hathman* found that there was "no evidence in [the] case of any standardized policy or practice of the Ohio State Highway Patrol specifically governing the opening of closed containers found during inventory searches." Id. The state trooper testified "concerning the scope of an inventory search related to the areas (or parts) of a vehicle which are normally searched, i.e., the interior, trunk, glove box, etc." Id. at 408. However, the Supreme Court found that the state trooper's testimony fell "short of establishing that some policy or practice of the Highway Patrol governed the opening of the closed containers." The court held that the state trooper's opening of the closed containers found during the inventory search was constitutionally impermissible, and that the evidence seized as a result had to be suppressed.

{¶17} In the case at bar, Ohio State Highway Patrol Policy 200.10 provides,

A. ADMINISTRATIVE INVENTORY <1.2.04> 1-7

**1. Completion** - An Administrative Inventory will be completed when sworn officer, or other Division employee where required, assumes the responsibility of a motor vehicle through an arrest, crash Investigation, recovered abandoned vehicle, or other seizure or custody situation.  This care, custody and control may be only temporary, such as assistance given to another agency at the scene of an arrest, crash, or incident.

* * *

**3. Requirements** - On the occasion of abandonment, traffic crashes, criminal investigations and certain arrest actions, It Is necessary for our officers to remove motor vehicles or other property from the scene to a location of greater security, Prior to releasing the motor vehicle or other property from Division control, an inventory muse be completed.   An administrative Inventory is necessary:

· To protect personal property

· To protect the public caretaker (e.g., towing or storage company)

· To protect the officer and the Division.

**4. Seizure of Evidence or Contraband** - The Division's policy is to Inventory all vehicles or other property with which we become involved where the owner or agent of the owner is unable to assume control of the Property.   If contraband or other incriminating materials are discovered during the course of an Inventory, the officer will seize the items following normal rules of evidence and file criminal charges where appropriate.  Once

an inventory has been initiated, the officer must complete the Inventory and should not stop after finding contraband or other Incriminating materials.

**8. Area of Inventory-** The following areas should be checked for Items of value:

· Passenger compartment of a motor vehicle. The passenger compartment is defined as any place the occupant can reach without exiting the vehicle.

· Glove compartment (unlocked or locked, if the key is available),

· Trunk area, to Include any side panel compartment and under the spare tire (when the trunk key is available, unless exigent circumstances exist or probable cause exists to Indicate Items of value are present).

· Engine compartment (visual observation of Items of value),

· Closed, locked, sealed, or taped containers.

. Other, vehicles (trailers being towed, etc, when the key is available).

· Luggage carriers.

State's Exhibit 1. In the case at bar, the owner of the vehicle had been removed from the scene and transported to the hospital. (T. at 6). The vehicle was not drivable and was required to be towed from the scene. (T. at 8). Clearly, Trooper Winans had assumed responsibility of the vehicle. Accordingly, Trooper Winans could lawfully conduct an inventory search of the vehicle pursuant to the Ohio State Highway Patrol's policy. Because the policy also contains standardized policy or practice specifically governing the opening of closed containers, Trooper Winans could lawfully open an item such as a backpack as part of the inventory process. However, under section (A)(4) of OSP-200.10,

the inventory is to be conducted only "where the owner or agent of the owner is unable to assume control of the property."

{¶18} In the case at bar, Zeigler exerted control over the property when he asked to have it returned to him. The backpack and its contents, minus the contraband, were released to Zeigler's girlfriend and were not inventoried. Trooper Winans testified, "I should have crossed that off the inventory" because "it wasn't part of the vehicle. It wasn't going with the vehicle to the tow truck, to the towing company." (T. at 16).

{¶19} We find the state's reliance on our decision in *State v. Herold*, 5th Dist. Licking No. 99CA0058 to be distinguishable.

{¶20} In *Herold*, after arresting Herold for driving under the influence, the trooper handcuffed Herold, searched him, and placed him in the backseat of the cruiser. Trooper Moran called for backup to assist with the passenger and requested a tow truck be sent to the scene to tow Herold's vehicle. During his direct examination, Trooper Moran stated the vehicle needed to be towed not only because Herold had been arrested for DUI, but also because the vehicle was partially on the roadway. The trooper further explained he was required to conduct an inventory search pursuant to Ohio State Highway Patrol procedures and policy because the vehicle was being towed. Inside the console, he found a tri-fold wallet, which contained five $20 bills, a social security card in Herold's name, various papers, and a plastic bag containing three small green squares, which were later identified as LSD.

{¶21} On appeal, Herold argued, among other things, he was capable of assuming control of his wallet; therefore, Trooper Moran did not need to search and inventory its contents. We held,

Upon review of the transcript of the hearing on the motion to suppress, we find Trooper Moran appropriately determined appellant's vehicle needed to be towed because appellant was arrested and his passenger was intoxicated. Therefore, pursuant to Department procedures and policy, the trooper was required to inventory the vehicle because "the owner or agent of the owner [was] unable to assume control of the property." Appellant argues he was able to assume control over his wallet; therefore the search of his wallet violated Department policy. We believe the phrase "control of the property" applies to the vehicle and its contents. Once the trooper assumed control over the automobile, we find the entire contents of the vehicle became subject to the inventory search.

{¶22} In *Herold*, the officer had evidence of a crime committed by Herold. The wallet accompanied the car when it was released to the tow company. Herold was not able to retrieve his wallet because he had been placed under arrest. In fact, Herold never asked to have his wallet retrieved from the vehicle.

{¶23} In the case at bar, unlike *Herold*, the trooper testified that she should have crossed the backpack off the inventory list because it was not going with the vehicle. Zeigler was not under arrest and was able to claim his property.

{¶24} Accordingly, the backpack did not need to be searched as part of the vehicle's inventory because Zeigler was not in custody and was able to take control of the backpack. The trooper had no reason to believe the backpack contained contraband or evidence of criminal activity. The trooper had no reason to believe that the backpack

needed to be searched for officer protection.  The trial court correctly ruled that the search

was not justified in the case at bar as part of the inventory search of the vehicle.

{¶25}  The state's sole assignment of error is overruled.

{¶26}  The judgment of the Knox County Court of Common Pleas is affirmed.


By Gwin J.,

Farmer, P.J., and

Baldwin, J., concur