[Cite as *State v. Parrish*, 2017-Ohio-867.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 16 CA 0048 |
| BRIAN W. PARRISH | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common
Pleas, Case No. 15 CR 0827


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    March 9, 2017


APPEARANCES:

For Plaintiff-Appellee

KENNETH W. OSWALT
PROSECUTING ATTORNEY
PAULA M. SAWYERS
ASSISTANT PROSECUTOR
20 South Second Street, 4th Floor
Newark, Ohio 43055

For Defendant-Appellant

ROBERT C. BANNERMAN
Post Office Box 77466
Columbus, Ohio 43207-0098

*Wise, John, J.*

{¶1} Appellant Brian W. Parrish appeals his conviction, in the Court of Common Pleas, Licking County, on one count of aggravated drug possession. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} On the evening of December 15, 2015, Appellant Parrish was riding as the sole passenger in a vehicle driven by Brett Mercer on Interstate 70. At about 8:00 PM on that date, Mercer's vehicle, a Mitsubishi Eclipse, was stopped for an observed marked lanes violation by Detective Tanner Vogelmeier of the Central Ohio Drug Enforcement ("CODE") Task Force. The stop occurred near mile-marker 126 in Licking County.

{¶3} Detective Vogelmeier noticed that the driver, Mercer, appeared "very, very nervous," exhibiting shaking hands and slight trembling in his speech. Tr., Suppression Hearing, at 17. Appellant, in the front passenger seat, had a Wendy's Restaurant take-out bag wedged between his left leg and the car's center console. The detective noticed that appellant also appeared nervous, and "was drinking his [Wendy's] drink like it was the last drink he was going to take." *Id.* at 18.

{¶4} Detective Vogelmeier decided to issue a warning, and accordingly he asked Mercer to accompany him back to the cruiser. He then continued writing a warning for the marked lanes violation. At about this time, Detective Adam Hoskinson arrived in a separate cruiser and deployed his K-9 partner, Buckeye, to conduct a free air search around the perimeter of Mercer's vehicle. Appellant was asked to step outside of the vehicle prior to the deployment of Buckeye. However, while performing the search, Buckeye suddenly jumped into the car through the driver-side door's open window. He then alerted on the Wendy's bag, which had ended up on the passenger-side floorboard.

Buckeye was taken back out of the car to continue the free air search. When the dog got around to the passenger-side door, he alerted from his exterior position.

{¶5} The officers thereupon conducted a search of the vehicle. Inside the aforesaid Wendy's bag, officers located plastic packages which contained a crystalline substance, suspected to be methamphetamine. Two cell phones were additionally discovered. Officers also located a glove in the driver's door pocket. Inside the glove, officers located a glass pipe with white residue in it. The crystalline substance from the Wendy's bag was later tested by Ohio BCI technicians and found to be slightly more than 69.8 grams of methamphetamine, a Schedule II controlled substance. The residue from the glass pipe was also tested by BCI and found to be methamphetamine.

{¶6} Both Mercer and appellant denied ownership of the drugs and paraphernalia. However, a search warrant was obtained for appellant's cell phone, which was found to contain numerous incriminating text messages.

{¶7} On December 23, 2015, appellant was indicted on one count of aggravated possession of drugs, R.C. 2925.11(A)/(C)(1)(c), a felony of the second degree, and one count of possession of drug paraphernalia, R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. Appellant entered pleas of not guilty to both charges.

{¶8} On February 9, 2016, appellant filed a motion to suppress evidence. Following a hearing on the motion, the trial court denied same.

{¶9} The matter proceeded to a jury trial on June 22, 2016. After hearing the evidence and arguments, the jury found appellant guilty on Count 1 (aggravated possession) but not guilty on Count 2 (paraphernalia). The trial court thereafter sentenced appellant to a prison term of seven years.

{¶10} New counsel was appointed to represent appellant, and a notice of appeal was filed on June 30, 2016. Appellant herein raises the following two Assignments of Error:

{¶11} ""I. THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

{¶12} "II. THE SPECIAL FINDING OF THE JURY AS TO BULK AMOUNT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I.

{¶13} In his First Assignment of Error, appellant contends the trial court erred in denying his motion to suppress, asserting that the officer lacked reasonable suspicion and/or probable cause to stop and search the vehicle in which he was riding. We disagree.

{¶14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court has held that as a general matter

determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *See Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

## *Initial Traffic Stop*

**{¶15}** Although appellant in his suppression motion challenged the validity of the initial traffic stop, he presently focuses most of his attention on subsequent events of the encounter. Nonetheless, we would note in the interest of justice the Ohio Supreme Court's recognition that " * * * if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *State v. Mays,* 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008–Ohio–4539, ¶ 8. "Any traffic violation, even a *de minimis* violation, can form a sufficient basis upon which to stop a vehicle." *State v. Williams*, 5th Dist. Stark No. 2005 CA 00106, 2006-Ohio-14, ¶ 11, citing *State v. Lambert*, 5th Dist. Stark No. 2001 CA 00089, 2001 WL 967898. A driver and his or her passengers have standing to challenge the legality of a traffic stop. *See State v. Carter,* 69 Ohio St.3d 57, 63, 630 N.E.2d 355, 1994–Ohio–343.

**{¶16}** In the case *sub judice*, Detective Vogelmeier clearly testified that he observed a marked lanes traffic violation, noting that Mercer's Eclipse "crossed [a] full tire length over the fog line." Suppression Tr. at 14. Vogelmeier further testified he made his observation on a clear night, with no obstructions, from a moving position in the left-hand lane, about four car lengths behind the Eclipse, which was in the right hand lane. *Id.* at 14-15.

**{¶17}** Accordingly, upon review, we hold the trial court did not err in denying appellant's suppression motion in regard to the issue of the traffic stop itself.

*Search of Mercer's Automobile*

**{¶18}** We next turn to the constitutionality of the search of Mercer's Eclipse conducted by Officers Vogelmeier and Hoskinson.

**{¶19}** As an initial matter, we *sua sponte* consider the issue of appellant's standing to challenge the search. As noted above, an automobile passenger has the right to challenge the legality of a traffic stop; however, "the question of a passenger's right to challenge a *search* of another's vehicle is a distinct matter." *State v. Jalloh*, 2nd Dist. Montgomery No. 24972, 2012-Ohio-5314, ¶ 30 (additional citations omitted). We have recognized that in order to establish standing to challenge a search of a vehicle or its contents, a passenger must prove an interest in the vehicle, an interest in the properties seized, or some other reason to establish a legitimate expectation of privacy in the vehicle. *See State v. Granados*, 5th Dist. Fairfield No. 13-CA-50, 2014-Ohio-1758, ¶ 60, citing *State v. Carter, supra*.

**{¶20}** Neither brief before us analyzes the present "standing" issue. However, in the interest of judicial economy, we will assume *arguendo* that even though appellant denied possession of the methamphetamine found in the Wendy's bag inside the vehicle, he at least had a possessory interest in the bag itself. We base this assumption on the officer's observations that the food bag was initially next to appellant's leg and that appellant was consuming a soft drink, presumably from the same restaurant order.

**{¶21}** Turning to the specifics of the actual search, the record indicates that Det. Vogelmeier had decided to issue a warning to Mercer for the white line violation, and Det.

Hoskinson meanwhile brought over K-9 Buckeye to conduct a free air search. According to Hoskinson, this type of search involves having the dog, upon command, "sniff the air around the outside of the vehicle for the odor of narcotics." Tr., Suppression Hearing, at 49. Buckeye came around the front of the Eclipse in a counter-clockwise fashion, came back at some point, and "like immediately jumped in" through the open driver's side window. *Id.* at 50. According to the officer, this behavior by the dog was "not something typical that he's done." *Id.* Buckeye then immediately proceeded to the Wendy's bag on the passenger-seat floor and stuck his nose in it. *Id.* However, after Hoskinson pulled Buckeye back out of the car's interior, the dog came around to the exterior of the passenger door and again alerted at the seam. *Id.* at 51.

**{¶22}** "[W]hen a motorist is lawfully detained pursuant to a traffic stop and when the purpose of the traffic stop has yet to be fulfilled, the Fourth Amendment is not violated when the officer employs a trained narcotics canine to sniff the vehicle for drugs." *State v. Latona,* 5th Dist. Richland No. 2010–CA–0072, 2011–Ohio–1253, ¶ 27. If such a narcotics dog then alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband. *See State v. Woodson*, 5th Dist. Stark No. 2007-CA-00151, 2008-Ohio-670, ¶ 20 (string citations omitted). Furthermore, police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search. *State v. Zeigler*, 5th Dist. Knox No. 16CA9, 2016-Ohio-8370, ¶ 11, quoting *Wyoming v. Houghton*, 526 U.S. 295, 307, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999).

**{¶23}** In the case *sub judice*, while Buckeye's aberrant jump into the subject vehicle's interior to get to the Wendy's bag raises certain cautionary flags for us, in terms

of both the constitutionality of roadside searches and general safety for persons and canines alike, under the circumstances presented we hold the dog's subsequent alert on the exterior of the car at the passenger's side door provided independent probable cause under the Fourth Amendment to justify the officers continuing the search.

### *Conclusion*

**{¶24}** Upon review, we find no reversible error in the trial court's denial of appellant's suppression motion in the instant case.

**{¶25}** Appellant's First Assignment of Error is overruled.

II.

**{¶26}** In his Second Assignment of Error, appellant contends the special finding by the jury as to "bulk amount" regarding the seized methamphetamine was against the manifest weight of the evidence. We disagree.

**{¶27}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶28}** In the case *sub judice*, appellant was charged with aggravated possession of drugs, specifically, 69.8 grams of methamphetamine. R.C. 2925.11(A) states as

follows: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Furthermore, R.C. 2925.11(C)(1) reads: "If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated possession of drugs. ***." Methamphetamine is defined in the Revised Code as "any salt, isomer, or salt of an isomer of methamphetamine, or any compound, mixture, preparation, or substance containing methamphetamine or any salt, isomer, or salt of an isomer of methamphetamine." R.C. 2925.01(II). In Ohio, methamphetamine is treated as a Schedule II controlled substance. *See* R.C. 3719.41.

{¶29} The pertinent penalty in this matter is found in R.C. 2925.11(C)(1)(c), as follows: "If the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree." Guidance for "bulk amount" pertaining to methamphetamine (as a Schedule II stimulant drug) is found R.C. 2925.01(D)(1)(g), which defines this term as "[a]n amount equal to or exceeding three grams of a compound, mixture, preparation, or substance that is or contains any amount of a schedule II stimulant, or any of its salts or isomers, that is not in a final dosage form ***."

{¶30} Thus, the 69.8 grams of methamphetamine at issue in the present case would fall between five times the bulk amount (5 x 3, or 15 grams) and fifty times the bulk amount (50 x 3, or 150 grams). At trial, the State called Jessica Kaiser, a BCI forensic

scientist, to testify as to the nature of the substance seized from the car in which appellant was a passenger. Trial Tr. at 157. Kaiser testified that she tested five small bags of a crystalline substance. Trial Tr. at 159-160. She stated that the bags were tested using the proper procedure and that the testing is scientifically recognized. *Id.* at 162, 169. She further testified that the five bags of crystal substance contained methamphetamine and that the weight of the crystal substance was 69.85 grams. *Id.* at 161. She stated that these conclusions were made to a reasonable degree of scientific certainty. *Id.* at 169.

{¶31} We find appellant's "manifest weight" argument essentially boils down to challenging whether the purity of the seized methamphetamine was properly demonstrated to the jury. *See* Appellant's Brief at 14. We recognize that the Ohio Supreme Court, in a certified conflict appeal, recently held that the State, in prosecuting cocaine offenses involving mixed substances under R.C. 2925.11(C)(4)(b) through (f), must prove that the weight of the cocaine meets the statutory threshold, excluding the weight of any filler materials used in the mixture. *See State v. Gonzales*, --- N.E. 3d ---, 2016-Ohio-8319. However, in reaching its decision (with three Justices signing the lead opinion and one Justice concurring in the judgment only, with a separate opinion) the Court accepted the reasoning of the Sixth District Court of Appeals in *State v. Gonzales*, 6th Dist. Wood No. WD–13–086, 2015-Ohio-461, which had determined that because the statutory definition of "cocaine" in R.C. 2925.01(X) does not reference a "mixture," a defendant may be held liable for cocaine offenses under R.C. 2925.11 for only that portion of the disputed substance that is chemically identified as cocaine. *Gonzales*, 2016-Ohio-8319, at ¶15, citing *Gonzales*, 2015-Ohio-461, at ¶ 45. In contrast, as indicated previously, methamphetamine's definition per the General Assembly includes "any

compound, *mixture*, preparation, or substance *containing* methamphetamine \*\*\*." R.C. 2925.01(II), *supra*, emphasis added.

**{¶32}** Accordingly, we respectfully find the holding of *Gonzales* to be inapplicable to the circumstances of the case *sub judice*, and we find the jury did not clearly lose its way and create a manifest miscarriage of justice in determining appellant possessed methamphetamine in the statutory bulk amount.

**{¶33}** Appellant's Second Assignment of Error is therefore overruled.

**{¶34}** For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed.


By: Wise, John, J.

Delaney, P. J., and

Baldwin, J., concur.


JWW/d 217