[Cite as *State v. Smith*, 2017-Ohio-2616.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 16 CA 30 |
| SHAWN MICHAEL SMITH | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal appeal from the Guernsey County Court of Common Pleas, Case No. 14-CR-234

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    May 1, 2017

APPEARANCES:

For Plaintiff-Appellee

JASON FARLEY
Assistant Prosecutor
145 N. 7th Street
Cambridge, OH 43725

For Defendant-Appellant

CHANDRA ONTKO
665 Southgate Parkway
Cambridge, OH 43725

*Gwin, P.J.*

{¶1} Defendant-appellant Shawn Michael Smith ["Smith"] appeals the December 2, 2016 judgment entry of the Guernsey County Court of Common Pleas that denied both his petition for post-conviction relief and his motion to disqualify the Guernsey County Prosecutor's Office.

*Facts and Procedural History*

{¶2} On June 14, 2015, Smith entered a negotiated plea of guilty to one count of Illegal Manufacture of Drugs, in violation of R.C. 2925.04, a second degree felony; one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, in violation of R.C. 2925.041, a felony of the third degree; and one count of Aggravated Possession of Drugs, in violation of R.C. 2925.11, a felony of the first degree. It was agreed by the parties that Counts 1 and 2 would merge at sentencing. The state agreed to recommend the sentences run concurrently, with the term of imprisonment left to the discretion of the trial court. *State v. Smith,* 5th Dist. Guernsey No. 15CA20, 2016-Ohio-483.

{¶3} Two days prior to sentencing, Smith moved to withdraw his guilty plea through a letter submitted to the trial court. The letter indicated Smith had no confidence in his trial counsel, and he did not commit the offense as alleged.

{¶4} On July 30, 2015, the trial court conducted a sentencing hearing. Prior to the sentencing hearing, the trial court heard Smith's motion to withdraw plea. The trial court denied Smith's motion to withdraw his plea, and then proceeded to sentence Smith to four years in prison. We affirmed the trial court's decision. *State v. Smith, supra.*

{¶5}    On March 23, 2016, Smith filed a motion to reconsider pursuant to Appellate Rule 26(B).  Smith argued that he was denied effective assistance of appellate counsel because, among other things, trial and appellate counsel failed to move the trial court to merge all three counts for sentencing as allied offenses of similar import pursuant to *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892.  In response to Smith's motion the state in its memorandum argued that the trial court was correct not to merge count three, the possession charge, with count one and count two because in count three Smith was separately charged with aggravated possession of drugs for "the key chain metal container holding methamphetamine found on his person incident to arrest."[1]  On June 17, 2016 that request was denied by this Court.  Smith did not appeal.

{¶6}    On June 28, 2016, Smith filed a second motion to reconsider.  In that motion, Smith argues, among other things, that he was unaware the possession charge concerned "the key chain metal container holding methamphetamine" as there was never any laboratory analysis submitted concerning the weight and the identity of the substance.  This Court denied that motion on October 31, 2016.  The Ohio Supreme Court declined jurisdiction.  *State v. Smith,* Ohio Sup. Ct. No. 2016-1808, 2017-Ohio-573 (Feb. 22, 2017).

{¶7}    On August 2, 2016, Smith filed a petition for post-conviction relief.  On October 3, 2016, Smith filed a motion to disqualify the Guernsey County Prosecutor's Office supplementing a previous motion to do the same filed June 30, 2016.

{¶8}    In an entry dated December 2, 2016, the trial court denied both the petition for post-conviction relief and the motion to disqualify the Guernsey County Prosecutor's Office.

---

[1] As will be explain, this assertion was incorrect.

*Assignments of Error*

{¶9} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPROPERLY DENYING THE APPELLANT TO WITHDRAW HIS GUILTY PLEA TO THE ILLEGAL MANUFACTURE OF DRUGS CHARGE, ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS CHARGE, AND AGGRAVATED POSSESSION OF DRUGS CHARGE.

{¶10} "II. THE APPELLANT HAS A CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶11} "III. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPROPERLY DENYING THE APPELLANT'S MOTION TO DISQUALIFY THE ENTIRE GUERNSEY COUNTY PROSECUTOR'S OFFICE."

I. & II.

{¶12} In his first assignment of error, Smith argues the trial court erred in denying his petition for post-conviction relief. In his second assignment of error, Smith contends that he received ineffective assistance of counsel.

{¶13} A petition for post-conviction relief is a means to reach constitutional issues that would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. *State v. Murphy,* 10th Dist. Franklin No. 00AP-233, 2000 WL 1877526(Dec. 26, 2000); *Accord, State v. Zich,* 6th Dist. Lucas No. L-15-1263, 2017-Ohio-414, ¶9. Although designed to address claimed constitutional violations, the post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905(1999); *State v. Steffen*, 70 Ohio St.3d 399, 410,

639 N.E.2d 67(1994). A petition for post-conviction relief, thus, does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819(1980). *State v. Lewis,* 5th Dist. Stark No. 2007CA00358, 2008-Ohio-3113 at ¶ 8.

{¶14} Smith raised the issues of the trial court's ruling upon his motion to withdraw his negotiated guilty plea and the ineffectiveness of counsel in his direct appeal. See, *Smith,* supra at ¶ 9. In that opinion, we noted,

> Appellant raises as a defense to the charges the sample weight of the evidence used by the State in prosecuting the offenses. The State and Appellant's counsel discussed the case law with regard to weight and testing of the methamphetamine seized. The methamphetamine at issue was in the liquid form or in water at the time of seizure; therefore, the full weight of the water/liquid was weighed, not the crystallized methamphetamine. At the plea withdraw hearing, the trial court discussed the case law in Ohio from the Sixth Appellate District and the Ohio Statutes providing for the methamphetamine amount mixture or preparation to be used to determine the degree of the crime charged. Tr. at 14.

> The trial court further discussed the strength of the State's case against Appellant, and the strong possibility of a conviction, including a strong odor of methamphetamines, the officer's observation of Appellant "cooking," eight cans of car starter fluid, fuels for lanterns, syringes, funnels, latex gloves, cold packs, batteries, bottles with hoses, and several

manufacturing sites in the same trailer. Based upon the strength of the State's evidence and the law in Ohio, the trial court found Appellant benefited from the plea agreed upon and the representation of his attorney.

* * *

The record herein demonstrates the trial court held a thorough hearing on the matter, and Appellant was given an ample opportunity to present any evidence to support his motion. Appellant did not have evidence of a defense; rather, the State had sufficient evidence to support a conviction on each charge, and the substance found at the scene later tested positive for methamphetamine. The record demonstrates Appellant benefited from his trial counsel's representation in the plea negotiations, he received a full and fair Criminal Rule 11 plea hearing and subsequent hearing on his motion to withdraw, and the trial court gave the motion to withdraw plea full and fair consideration. We find the trial court did not abuse its discretion in denying Appellant's motion to withdraw his plea of guilty.

*Smith,* 2016-Ohio-483, ¶19-20; 23.

{¶15} Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. *State v. Szefcyk,* 77 Ohio St.3d 93, 671 N.E.2d 233(1996), *syllabus, approving and following State*

*v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104(1967), paragraph nine of the syllabus. It is well settled that, "pursuant to *res judicata*, a defendant cannot raise an issue in a [petition] for post-conviction relief if he or she could have raised the issue on direct appeal." *State v. Reynolds*, 79 Ohio St.3d 158, 161, 679 N.E.2d 1131(1997). Accordingly, "[t]o survive preclusion by *res judicata*, a petitioner must produce new evidence that would render the judgment void or voidable and must also show that he could not have appealed the claim based upon information contained in the original record." *State v. Nemchik*, 9th Dist. Lorain No. 98CA007279, 2000 WL 254908 (Mar. 8, 2000); *see, also, State v. Ferko*, 9th Dist. Summit No. 20608, 2001 WL 1162835(Oct. 3, 2001). The presentation of competent, relevant, and material evidence dehors the record may defeat the application of *res judicata*. *See State v. Smith*, 17 Ohio St.3d 98, 101, 17 OBR 219, 221, 477 N.E.2d 1128, 1131-1132(1985), fn. 1.

{¶16} Similarly, regarding claims of ineffective assistance of trial counsel in post-conviction proceedings, the Ohio Supreme Court has stated that where a defendant, represented by different counsel on direct appeal, "fails to raise [in the direct appeal] the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for post-conviction relief." *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169(1982), syllabus; *see, also, State v. Lentz,* 70 Ohio St.3d 527, 530, 1994-Ohio-532, 639 N.E.2d 784(1994).

{¶17} Where ineffective assistance of counsel is alleged in a petition for post-conviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had

substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant. *State v. Jackson, supra; State v. Lytle* (1976), 48 Ohio St.2d 391, 358 N.E.2d 623. Generally, the introduction in an R.C. 2953.21 petition of evidence dehors the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of *res judicata*.

**Count Three Aggravated Possession of drugs.**

{¶18} In the case at bar, Count Three of the Indictment read:

On or about the 8th day of November 2014, the Defendant did knowingly obtain, possess or use, a Controlled Substance, to wit: Methamphetamines, in an amount greater than 50 times the bulk amount, but less than 100 times the bulk amount, in violation of Ohio Revised Code Section 2925.11, entitled "AGGRAVATED POSSESSION OF DRUGS" (Felony of the First Degree).

{¶19} R.C. 2925.11(A) states as follows, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Furthermore, R.C. 2925.11(C)(1) reads: "If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated possession of drugs.   * * *." Methamphetamine is defined in the Revised Code as "any salt, isomer, or salt of an isomer of methamphetamine, or any compound, mixture, preparation, or substance containing methamphetamine or any salt, isomer, or salt of an isomer of

methamphetamine."   R.C. 2925.01(II).   In Ohio, methamphetamine is treated as a Schedule II controlled substance.  See R.C. 3719.41.

{¶20}  The pertinent penalty in this matter is found in R.C. 2925.11(C)(1)(d), as follows: "If the amount of the drug involved equals or exceeds fifty times the bulk amount but is less than one hundred times the bulk amount, aggravated possession of drugs is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree."  Guidance for "bulk amount" pertaining to methamphetamine (as a Schedule II stimulant drug) is found R.C. 2925.01(D)(1)(g), which defines this term as "[a]n amount equal to or exceeding three grams of a compound, mixture, preparation, or substance that is or contains any amount of a schedule II stimulant, or any of its salts or isomers, that is not in a final dosage form *** ."

{¶21}  In the case at bar, 191.13 grams of methamphetamine was found.  At the hearing on Smith's original motion to withdraw his guilty pleas held before sentencing on July 30, 2015, the trial court made the BCI report "State's Exhibit 1" and admitted it into the record.  (Sent. Hearing Transcript, July 30, 2015 at 28).  Thus, the 191.13 grams of methamphetamine at issue in the present case would fall between fifty times the bulk amount (50 x 3, or 150 grams) and one hundred time the bulk amount (100 x 3, or 300 grams).   In the case at bar, the trial court merged Count One and Count Two for sentencing, and ran the three-year sentence for the merged counts with the four-year sentence for Count Three the possession charge.  Thus, Smith received an aggregate mandatory sentence of four years.

{¶22}  In *State v. Houston*, the court found,

The Ohio statute is clearly written to provide that the entire weight of the mixture of chemicals that will produce methamphetamine is to be used if it contains any amount of methamphetamine and not the final weight of the methamphetamine crystals that could have formed.  For whatever reason, the General Assembly has determined that this is the proper method of determining the bulk amount for this type of controlled substance.

6th Dist. Williams No. WM-10-010, 2011-WL-363, ¶22; *Accord, State v. Parrish,* 5th Dist. Licking No. 16 CA 0048, 2017-Ohio-867, ¶31.  *Cf. State v. Gonzales,* __Ohio St.3d___, 2017-Ohio-777, ___N.E.3d ___ (Mar. 6, 2017), ¶ 18.

**{¶23}** It is clear from a review of the combine hearing on Smith's motion to withdraw his guilty pleas and sentencing held July 30, 2015, that Smith, his attorney, the state's attorney and the trial judge were aware that Count Three was based upon the 191.13 grams of methamphetamine that was found in liquid form.

THE COURT: Now, what you're referring to the weight and the testing, one of the issues in this case was that the methamphetamines allegedly that were seized from you were still in liquid form or in water, and the full weight of the liquid or the water was weighed, not the crystalized methamphetamine.  Is that what you're referring to?

THE DEFENDANT: Yes, sir.

THE COURT:  All right.  That's fine, That wouldn't be clear on what you just said, Shawn, but I understand your case, as we prepared for trial, the Court did, so please go on,

THE DEFENDANT: Well, I mean, I asked clear back in, I think it was May, and I don't know if he thought that maybe I just was going to eventually cop out or whatever until the plea bargain or something, but nothing got done until like a week before trial, and, I mean, there's other people that I wanted to get statements from because there's a lot of discrepancies, and the arresting officer's statement and none of that got done, I mean, there's just -- there's things that could have been done that wasn't.

* * *

THE COURT: You both raised that with the Judge in chambers, and we were looking towards preparation for trial. Mr. Mooney was well prepared and very knowledgeable regarding that, and I cited both of you to the, what I believe to be the leading case that [I] can find, State versus Houston from the Sixth Appellate District decided in January of 2011, and that states that case stands for the proposition that Ohio statutes clearly provide for methamphetamine the amount of the mixture or preparation was to be used to determine the degree of the crime charged, and that case is very similar to the case that you are -- or the argument that you are now making, and I cited it to both of you as the leading case as Ohio law. And you also have State versus Ruff, which is from the Supreme Court of Ohio in March of this year, which deals with the merger issue that you dealt with clearly on your negotiated plea.

But those are the cases the Judge cited to you.

MR. SIEGLER: Yes, and we discussed those cases, Your Honor. So based upon that, then Mr. Mooney said, well, I'd like to have an expert to actually make sure that that methamphetamine does, in fact, show up in the sample that you have.

THE COURT: Yes, I remember that.

MR. SIEGLER: So to that end --

THE COURT: For this Court was then moved to appoint an expert, as you have just said, for the defense, and that expert was appointed to be Kevin Keaton, forensic scientist from SEA laboratory in Columbus, Ohio, and the Court granted that by entry of June 28th, 2015. You may continue.

MR. BIEGLER: To that end, Your Honor, we had an agreement where the Detective Sergeant Mackie actually took the sample to Columbus, they tested the sample, and Detective Sergeant Mackie then brought the sample back of that, but I would only be entitled to the results of that if it was going to be used at trial.

THE COURT: All right, But, now, Mr. Mooney also filed, right along with that, contrary to Mr. Smith's argument, that his attorney didn't do anything for him. On July 1st, demand for testimony at trial of Keith Taggart who was the forensic scientist from BCI.

MR. BIEGLER: Yes. Thank you, Your Honor.

THE COURT: Testify regarding the analysis of the drug.

* * *

MR. BIEGLER: Yes, Gatorade bottle, and then for the other charges, here is liquid fire and crystal drain cleaner. Here's batteries. Perhaps this picture does the most -- well, these two combined, there are eight cans of car starter fluid, fuel for like a Coleman lantern type fuel, syringes, funnels, latex gloves, cold packs, some used batteries, and then you have bottles that have hoses coming out of the top of them, one there, another one in the sink, another one beside a cooler. So we're not talking about one little bottle. This is the bottle that was found that's tested, and this is the one that has the methamphetamine in it. But we have the other charge of manufacturing, and there's several different manufacturing sites, all within the two trailers that are side by side to each other at this property.

* * *

THE COURT: I apologize. Let me interrupt you there for just a moment. Do you believe that Houston is the -- I said leading case. It's the only case from the courts of appeals that I can discern. Is there any supreme court [sic.] case different?

MR. MOONEY: No, I think that is the controlling case in Ohio. I think that the research that our office did, I believe that I could point the Court to cases in other jurisdictions that handle it differently. I think that fundamentally there are two ways of doing this, you can say, as Ohio does, but in reality, that's the amount, or we can see that there has been in other drug cases a recognition that maybe you do need to synthesize things. Marijuana cases come to mind where you shouldn't --

THE COURT; Yes, that argument is well made. You have made that for Mr. Smith in chambers, and the Court advised that the Judge, if you attempt to argue that at trial, would have to overrule your request, for the legislators of the State of Ohio, for reasons presumably because of the dangerous nature of the drug methamphetamine, have chosen to use the entire weight of the compound, not the -- not the crystalized end. Your argument is well made.

They have treated cocaine and marijuana different, but it is not the duty of the Judge to rewrite the law of Ohio, but to follow it. But that argument was made by you in fairness in chambers on behalf of your client. The Houston case, however, is persuasive authority to the Court. It is not controlling, as it's not from the Fifth District Court of Appeals, but persuasive weight has been given to it by this Judge, for that's exactly what the legislators are presumably saying the way they wrote the methamphetamine statute.

So your argument is well made, but I heard it before, and I told you what the ruling of the Court would be before, and you made that in fairness on behalf of Mr. Smith. Is there other argument that you wanted to make at this time? Now, we're limited now to the pro se motion. Later, if, and only if, the Court finds the pro se motion should be denied, will we move to sentencing. Is there anything further on this issue you wish?

Sent. T., July 30, 2015 at 9-10; 13-15; 21-25.

{¶24} In addition, neither Count I of the Indictment in Smith's case, illegal manufacture of drugs, in violation of R.C. 2925.04 or Count II of the indictment illegal possession or assembly of chemicals for the manufacture of drugs in violation of R.C. 2925.041, require the finished product of methamphetamines in a specific quantity.

{¶25} Smith concedes that he "he had every reason to believe that the liquid was the substance constituting the possession charge." (Appellant's Brief at 10). Unfortunately, it appears that the state mistakenly stated in its response filed April 22, 2016 that the "white powdery substance found in a container attached to Smith's belt" at the time of his arrest was being the basis for the possession charge. We further perpetuated this mistake by referring to it in our June 17, 2016 Judgment Entry overruling Smith's motion to reconsider. However, Smith has failed to present any evidentiary quality materials to indicate that this was anything more than a misstatement by the state. He therefore has failed to demonstrate prejudice.

**Merger.**

{¶26} R.C. 2953.08 provides,

(D)(1) A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge.

{¶27} In the case at bar, the trial court explained to Smith,

THE COURT: All right. Let's turn to the third page of the plea form, please. Here is the essence of the terms of your negotiated plea. It states no promises have been made except as part of this plea agreement stated

in their entirety as follows: The defendant to plead guilty to all counts of the indictment -- that's what I just reviewed with you -- and withdraw his jury demand. Counts 1 and 2 merge for sentencing purposes, but Count 3 does not merge.

Now, let's stop there with that sentence for a moment, please, Mr. Smith. Do you understand that merge or merger under Ohio law means that you may be convicted of as many crimes as your conduct or action predicates or can be based, but you may only be sentenced on one?

THE DEFENDANT: Yes, sir.

THE COURT: So Count 1 and Count 2 merge. There's an agreement of the parties. The State -- but Count 3, which is the completed product, I will call it, of manufacturing the methamphetamines and possessing it does not merge. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Now, the State will agree -- and this is a very important sentence for you. I want you to read it carefully with me. The State agrees to a concurrent sentence. Now, the word concurrent means running at the same time. Do you understand that?

THE DEFENDANT: Yes, sir.

* * *

THE COURT: All right. Then you have signed the plea form stating you have entered into this plea voluntarily. Now, I just reviewed all the

requirements of Ohio law, so is there anything you feel you do not understand?

THE DEFENDANT: No, sir.

THE COURT: Then you are proceeding knowingly. And, last, I need to know if you have conferred with your attorney, Mr. Mooney?

THE DEFENDANT: Yes, sir.

THE COURT: And you're relying on his advice in proceeding in this manner?

THE DEFENDANT: Yes, sir.

T. Plea Hearing, July 14, 2015 at 12-13; 21-22.

{¶28} To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. *Cole*, syllabus. Smith has failed in this burden. Accordingly, because Smith expressly agreed that Count III would not merge with Count I and Count II for sentencing, his attorney could not raise the trial court's failure to merge the counts on appeal. R.C. 2953.08(D)(1).

{¶29} Accordingly, Smith has failed to submit evidentiary material containing sufficient operative facts that demonstrate a substantial violation of any of defense counsel's essential duties to his client and prejudice arising from counsel's ineffectiveness. *Calhoun,* 86 Ohio St.3d at 289, 714 N.E.2d 905; *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819(1980), syllabus; see, also *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693(1984).

{¶30} Therefore, we find Smith has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725,734, 113 S.Ct. 1770(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002*), quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

{¶31} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that Smith set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

{¶32} Smith's first and second assignments of error are overruled.

III.

{¶33} In his third assignment of error, Smith argues that the trial court erred in denying his motion to disqualify the Guernsey County Prosecutor's Office.

{¶34} When reviewing an allegation of a prosecutor's misconduct or disqualification, the reviewing court must review the matter on a case-by-case basis. *State v. Morris*, 5th Dist. Stark No.2004CA00232, 2005–Ohio–4967; *State v. Bachman,* 5th Dist. Stark No. 2014CA00198, 2015-Ohio-2054. The mere appearance of impropriety is insufficient to warrant the disqualification of an entire prosecutor's office. A decree disqualifying the prosecutor's office should only be issued by a court when actual prejudice is demonstrated. *Morris,* ¶ 15. Such challenges are usually in the context of a prosecutor who has previously represented a defendant, thus potentially creating an appearance of a conflict of interest. *See, e.g. State v. Freeman*, 20 Ohio St.3d 55, 485

N.E.2d 1043 (1985). In these cases, the defendant has the burden of demonstrating an actual conflict of interest in order to have the prosecutor's office removed. *Morris,* ¶20. Another common challenge is where a prosecutor testifies in a proceeding or trial that he or she is prosecuting. The ultimate question is whether the defendant was prejudiced.

{¶35} In the case at bar, Smith's claim is based upon the alleged "hiding" of information by the prosecutor's office and Smith's issues with the prosecutor's previous responses and oppositions to his motions and appeals.

{¶36} As we noted in our disposition of Smith's First and Second Assignments of Error, unfortunately, it appears that the state mistakenly stated in its response filed April 22, 2016 that the "white powdery substance found in a container attached to Smith's belt" at the time of his arrest was the basis for the possession charge. We further perpetuated this mistake by referring to it in our June 17, 2016 Judgment Entry overruling Smith's motion to reconsider.

{¶37} It is clear from a review of the combine hearing on Smith's motion to withdraw his guilty pleas and sentencing held July 30, 2015, that Smith, his attorney, the state's attorney and the trial judge were aware that Count Three was based upon the 191.13 grams of methamphetamine that was found in liquid form. Smith concedes that he "he had every reason to believe that the liquid was the substance constituting the possession charge." (Appellant's Brief at 10).

{¶38} Smith has failed to present any evidentiary quality materials to indicate that this was anything more than a misstatement by the state. He therefore has failed to demonstrate prejudice.

{¶39}  Based upon our review of the record, we conclude that Smith has failed to meet his burden of demonstrating actual prejudice and the trial court did not abuse its discretion in denying Smith's motion to disqualify the prosecutor's office.

{¶40}  Therefore, we find Smith has failed to sustain his burden of demonstrating that an error affected his substantial rights.  *United States v. Olano*, 507 U.S. at 725,734, 113 S.Ct. 1770(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004).  We find no manifest miscarriage of justice occurred in this case.  *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002*), quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

{¶41}  The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that Smith set forth sufficient operative facts to establish substantive grounds for relief.  *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

{¶42}  Smith's third assignment of error is overruled.

{¶43}  The judgment of the Guernsey County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur